REVISED, June 17, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-40376
_____


CERTAIN UNDERWRITERS AT LLOYD'S LONDON, Who are Members of
Lloyd's Syndicates Numbered 658, 483, 741, 687, 79, 872, 535,
552, 123, 114, 741, 209, 1023, 309, 872 and 500; INDEMNITY
MARINE ASSURANCE CO LTD; ZURICH RE UK LTD.; OCEAN MARINE
INSURANCE CO LTD; COMMERCIAL UNION ASSURANCE; THE TOKIO MARINE
& FIRE; PHOENIX ASSURANCE PLC LSA; NORTHERN ASSURANCE COMPANY
LIMITED; GAN MINSTER INSURANCE COMPANY, LIMITED; TERRA NOVA
INSURANCE COMPANY LTD; PHOENIX ASSURANCE PUBLIC LIMITED;
CORNHILL INSURANCE PLC; THE YORKSHIRE INSURANCE COMPANY,
LIMITED; SKANDIA MARINE INSURANCE COMPANY (UK); SCOTTISH LION
INSURANCE COMPANY, LIMITED; HANSA RE & MARINE INSURANCE
COMPANY (UK) LIMITED; THREADNEEDLE INSURANCE COMPANY, LIMITED;
SPHERE DRAKE INSURANCE; DAI-TOKOYO INSURANCE COMPANY;
COMPAGNIE D'ASSURANCEY MARTIMES; AERIENNES & TERRESTRES
(CAMAT); AMERICAS INSURANCE COMPANY; HANSA RE-MARINE; ANGLO
AMERICAN INSURANCE COMPANY, GAN FRANCE; PHOENIX 09/01/75;
TERRA NOVA; CAMAT 1992; CORNHILL D A/C; SKANDIA MARINE;
INDEMNITY MARINE; YORKSHIRE L A/C; ZURICH RE; OCEAN MARINE;
PHOENIX LSA A/C; NORTHERN MARINE; LONDON & EDINBURGH; GAN
MINSTER; GERNERALI; SPHERE DRAKE NO. 1; SCOTTISH LION,

                              Plaintiffs-Appellees
                              Cross-Appellants,

                    versus

ORYX ENERGY COMPANY,

                              Defendant-Appellant
                              Cross-Appellee.

                  *  *  *  *  *

ORYX ENERGY COMPANY,

                              Plaintiff-Counterclaim
                              Defendant-Appellant
                              Cross-Appellee,

                    versus

LLOYD'S OF LONDON, Certain Underwriters who are members of Lloyd's Syndicates Numbered 658, 483, 741, 687, 79, 872, 535, 552, 123, 114, 741, 209, 1023, 309, 872 and 500,

Defendants-Counterclaim
Plaintiffs-Appellees
Cross-Appellants,

INDEMNITY MARINE ASSURANCE CO LTD; ZURICH RE UK LTD; OCEAN MARINE INSURANCE CO LTD; COMMERCIAL UNION ASSURANCE; THE TOKIO MARINE & FIRE; PHOENIX ASSURANCE PLC LSA; NORTHERN ASSURANCE COMPANY LIMITED; GAN MINSTER INSURANCE COMPANY, LIMITED; TERRA NOVA INSURANCE COMPANY LTD; PHOENIX ASSURANCE PUBLIC LIMITED; CORNHILL INSURANCE PLC; THE YORKSHIRE INSURANCE COMPANY, LIMITED; SKANDIA MARINE INSURANCE COMPANY (UK); SCOTTISH LION INSURANCE COMPANY, LIMITED; HANSA RE & MARINE INSURANCE COMPANY (UK) LIMITED; THREADNEEDLE INSURANCE CO, LTD; SPHERE DRAKE INSURANCE; DAI-TOKYO INSURANCE COMPANY; COMPAGNIE D'ASSURANCEY MARTIMES; AERIENNES & TERRESTRES (CAMAT); AMERICAS INSURANCE COMPANY; HANSA RE-MARINE; ANGLO AMERICAN INSURANCE COMPANY; GAN FRANCE; PHOENIX 09/01/75; TERRA NOVA; CAMAT 1992; CORNHILL D A/C; SKANDIA MARINE; INDEMNITY MARINE; YORKSHIRE L A/C; ZURICH RE; OCEAN MARINE; PHOENIX LSA A/C; NORTHERN MARINE; LONDON & EDINBURGH; GAN MINSSTER; GERNERALI; SPHERE DRAKE NO. 1; SCOTTISH LION,

Defendants-Appellees
Cross Appellants.

---

Appeals from the United States District Court for
the Southern District of Texas

---

May 26, 1998

Before REAVLEY, DeMOSS and PARKER, Circuit Judges.

REAVLEY, Circuit Judge:

The district court has held that a Texas statute limiting the indemnification of a negligent indemnitee limits the liability insurance coverage obtained by the indemnitor for the indemnitee. We disagree and reverse the judgment.

*BACKGROUND*

2

Mallard Bay Drilling, Inc. (Mallard), owner of a drilling platform off the Texas coast, contracted with Oryx Energy Company (Oryx) for work on a well. The contract provided for Mallard's indemnity of any liability suffered by Oryx, and it also required Mallard to obtain liability insurance for Oryx. Mallard did obtain coverage of Oryx by Lloyds of London (Underwriters). An employee of Mallard was seriously injured while working on the platform and sued Oryx for negligence. That case was settled with Underwriters contributing $11,050,000 but asserting that coverage above $500,000 was barred by the Texas Anti-Indemnity Act (the Act) which prevents enforcement of mineral agreements providing for indemnification of negligent indemnitees as against the public policy.[1] Underwriters sued Oryx for reimbursement and Oryx sued Underwriters for a declaration that Underwriters owed full coverage. That is the dispositive issue in this appeal.

As an initial view of the controversy, we would not expect insurance covering an insured for liability due to his negligence to violate a state law or policy, regardless of which party pays the premium. Two questions, however, must be answered: First, do the terms of Underwriters' policy limit coverage, and Second, do the provisions of the Texas statute reach the coverage of the indemnitee when the indemnitor is required to obtain the

---

[1] TEX. CIV. PRAC. & REM. CODE § 127.001 *et seq.* (West 1997).

3

insurance by a contract that also imposes an unenforceable

indemnity upon the indemnitor?[2]


*DISCUSSION*

*Terms of Underwriters' Policy*

Oryx is an "Assured" under the policy and thereby insured to

the full policy limit for personal injury claims.  Several

provisions so state.  Definition 1(d) of Section II of the policy

[2]Oryx continues to argue on appeal that because they never consented to Underwriters' condition of reserving their right to dispute coverage, Underwriters are now estopped from arguing any coverage defenses or have waived any such defenses.  We agree with the district court that Underwriters are not estopped from asserting coverage defenses.  Oryx did not show all three element necessary to establish waiver or estoppel. *Pennsylvania Nat'l Mut. Case. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478, 481 (5th Cir. 1992); *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 603 n.1 (Tex. 1988).  The record evidence shows that Underwriters knew of facts and circumstances indicating non-coverage by January 26, 1995.  Nonetheless, Underwriters never fully assumed Oryx's defense prior to issuing its reservation of rights letter.  The policy did not require Underwriters to assume Oryx's defense, and the letter from Robert Killeen to Oryx's first counsel clearly stated that Killeen was the counsel for Mallard Bay Drilling and that it was Mallard who had agreed to defend and indemnify Oryx.  Underwriters did send to Oryx a reservation of rights letter dated February 23, 1996 that fully and unambiguously informed Oryx of Underwriters' position, and was specifically written to show Underwriters' intent to prevent a later claim by Oryx that coverage defenses not raised in the reservation of rights letter were either waived or that Underwriters were otherwise estopped from asserting them.  Unless Oryx can demonstrate that they suffered a "clear and unmistakable" harm from Underwriters' actions, Underwriters will not be estopped from raising coverage defenses.  *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 553 (Tex.App.—Dallas 1990) reh'g denied; *Pennsylvania Nat.*, 964 F.2d at 482 (finding insurer not estopped from raising coverage defenses even though more than one year passed since insurer assumed and continued the insured's defense before issuing its reservation of rights letter). Considering Oryx believed that $26,000,000 was a fair amount to pay Mote in view of the nature, extent and severity of his injuries, Oryx cannot now successfully argue that it was harmed by the $12,000,000 settlement.

4

provides that an "Assured" is "any additional Assured (not being the Named Assured under this Policy) included in the Underlying Insurances, subject to the provisions in Condition B; but not for broader coverage than is available to such an additional Assured under any underlying insurances set out in attached schedule."[3] Oryx is an "additional assured" pursuant to the Declarations and General Conditions portion of the policy. It provides:

> It is understood and agreed that any . . . corporation . . . and/or entity for whom or with the Assured may be operating is hereby named as additional assured when required.

The policy was required by the agreement between Mallard and Oryx. Under the terms of that agreement the parties mutually agreed that all indemnity obligations and/or liabilities assumed by the parties would be without limit and without regard to causes or negligence of any of the parties. The agreement further provides that Mallard shall carry

> at its own expense and with deductibles for its sole account, the insurance coverage set forth in Schedule E . . . . Any failure by [Mallard] to obtain and maintain such coverages shall constitute a breach hereof and [Mallard] shall be solely responsible for any loss suffered as a result of such deficiency in coverage. . . . It is expressly understood and agreed that the coverage required represent Company's minimum requirements and are not to be construed to void or limit Mallard's indemnity obligations as contained in this [Agreement] (except to the extent that the laws of the state or states where the Work is to be performed

---

[3]Condition B dictates only that in the event additional assureds are added to the coverage, Underwriters will be promptly informed and are entitled to charge an appropriate additional premium. Despite Underwriters' suggestion to the contrary, Condition B is specific to Section II of the policy and does not need to be linked to any other policy section.

require that the amounts of such insurance coverages and/or indemnity obligations are limited).

Schedule E, incorporated into the insurance provision, specifically states that:

> [t]he policy (or policies) of insurance obtained by [Mallard], except Worker's Compensation, and Protection and Indemnity shall provide that [Oryx] . . . are additional insured for all coverages, *to the extent of the indemnity provided by Mallard under this Contract.*

The district court focused on the italicized language and concluded that Oryx need be insured only to the extent of Mallard's unenforceable indemnity obligation; the Texas Anti-Indemnity Act renders indemnity obligation itself invalid as against public policy; and because Oryx is an additional assured only to the extent of an unenforceable indemnity provided by Mallard, Underwriters' insurance obligation is limited under the Act. We disagree.

The "extent" of the indemnity is "without limit" "on account of bodily injury" arising in favor of Mallard's employee. The obligation of Mallard is to insure Oryx to that extent. There is no justification for an argument that Texas courts would engraft a limit on coverage to match the Texas law defense as if the suit were only to enforce the indemnity itself.


*The Texas Anti-Indemnity Act*

The Texas Anti-Indemnity Act provides that an agreement pertaining to an oil or gas well is void if it purports to indemnify a party against liability caused by the indemnitee's

6

sole or concurrent negligence and arising from personal injury, death or property damage.[4]

The Act was enacted in 1973 in response to a perceived inequity in the oil and gas industry.[5] The Texas legislature concluded that big oil companies and oil well operators maintained an unfair bargaining position allowing them to enter into "hold harmless" drilling and service contracts with small contractors.[6] Such agreements would require the contractors to indemnify the oil companies and operators against losses caused by their own negligent acts.[7] The Act memorialized the legislature's conclusion that such agreements placed an undue financial burden on the smaller contractors with less bargaining power than the operators with whom they had negotiated.[8] The Act's purview, however, is not restricted to agreements between large oil companies and small contractors, but extends to all oil and gas parties who enter into agreements seeking indemnification against its own negligence.[9]

---

[4]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 127.003 (West 1997).

[5]*Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794, 803 (Tex. 1992).

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]*See id; see also Greene's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co.*, 113 F.3d 47 (5th Cir. 1997); *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115 (5th Cir. 1992); *Arkwright-Boston Mfg. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442 (5th Cir. 1991).

In 1989, without changing the basic purpose of the Act, the Texas legislature amended it, and thereby expanded the Act by broadening the definition of "well or mine service" and the number of exclusions under the Act.[10]  Prior to the 1989 amendments, the Act equally treated all oilfield related indemnification agreements, generally prohibiting those that purported to indemnify an indemnitee for its own negligent acts, but with the exception of allowing such agreements if the indemnitor agreed in writing that its obligation would be supported by insurance, the amount required not to exceed a sum that equaled $300,000.[11]  The 1989 amendments heralded the most extensive additions to the Act and by § 127.005 provided for exceptions for indemnity provisions that are supported by liability insurance.

The district court concluded that the Texas legislature intended § 127.005 to encompass the entire field of insurance coverage where the parties also contract for indemnity obligations.  Section 127.005, however, does not apply to this case.  The difference between Oryx's claim as an insured and a claim relating to § 127.005 (i.e., a claim by an indemnitee against an insurer of the indemnitor) is displayed by a case

---

[10]Patrick H. Martin & J. Lanier Yeates, *Louisiana & Texas Oil and Gas Law: An Overview of the Differences*, 52 LA. L. REV. 769, 853-54 (1992).

[11]*See id; Campbell*, 979 F.2d at 1126.

Underwriters mistakenly contend supports them: *Greene's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co.*[12]

Greene did not sue as an insured but sued the operator, and the insurer of the operator, contending that § 127.005 of the Act lifted the indemnity proscription. At issue was the insurance coverage of the indemnitor, not the indemnitee. The contract between Greene and the operator did not require the contractor to obtain coverage for Greene but only obligated the parties to support the indemnity agreement with available liability insurance. The Greene case and § 127.005 have no application to the case before us.

Moreover, the Supreme Court of Texas in *Getty Oil v. Insurance Co. of North America,*[13] rejected Underwriters' position that the Act necessarily bars insurance coverage for the indemnitee. In that case, as in our case, Getty Oil sued an insurance company on grounds of a contract provision requiring NL Industries to purchase liability insurance for Getty Oil. Judgment had been rendered against Getty Oil on the ground that the insurance requirement was facially invalid because it made NL Industries indemnify Getty Oil for Getty Oil's own negligence, which was forbidden by the Act. The Texas Supreme Court reversed, saying the Act applied only to indemnity agreements and that § 127.005 does not purport to regulate any agreements for the purchase of insurance unless the insurance is only to support

---

[12]113 F.3d 47 (5th Cir. 1997).

[13]*Getty Oil Co.*, 845 S.W.2d at 805.

9

the performance of the indemnity.  Further, "the additional insured provision, which does not support an indemnity agreement, is not prohibited by the language of the [Act]."[14]

As the *Getty Oil* court remarked, insurance is meant to protect the contractors from large and uncertain liabilities.  By paying premiums, Mallard and Oryx essentially shifted the risk of loss to Underwriters.  Mallard and Oryx intended to and did enter into a contract in which all insurance coverage carried by Mallard was to extend to and protect Oryx.  The policy itself clearly contemplates that the number of additional assureds may increase and required increased premiums for coverage precisely for such situations.  Underwriters should pay as directed under the policy.

*Right to Reimbursement for Punitive Damages*

While Underwriters are not entitled to reimbursement for funds paid in the Mote settlement to cover the personal injuries, they are entitled to reimbursement for funds paid to cover punitive damages that are excluded from coverage under the policy.  The policy expressly excludes liability for "fines, penalties, punitive or exemplary damages, including treble damages or any other damages resulting from multiplication of compensatory damages."  Underwriters have no liability for that part of the settlement paid to settle Oryx's punitive damage

---

[14]*Id.* at 804.

10

exposure.  The parties have raised a genuine issue of material fact regarding the amount attributable to punitive damages.

*Conclusion*

For the foregoing reasons, we REVERSE the judgment and remand the case for further proceedings in accord with this opinion.

Reversed and Remanded.