**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-21154
_____

MID-CONTINENT CASUALTY COMPANY,

Plaintiff-Appellee,

versus

SWIFT ENERGY COMPANY; ET AL,

Defendants,

SWIFT ENERGY COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

March 9, 2000

Before KING, Chief Judge, and REYNALDO G. GARZA and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this insurance coverage declaratory judgment diversity action, Swift Energy Company

("Swift" or "Company") appeals from a summary judgment entered by the district court in favor of

Mid-Continent Casualty Company ("Mid-Continent"). The district court found that Mid-Continent

was not required to indemnify or defend Swift with regard to a lawsuit filed by Air Equipment Rental, Inc. ("Air Equipment" or "Contractor") employee Oscar Lozano ("Lozano") under any of the following: 1) the Master Service Contract between Flournoy Drilling Company ("Flournoy") and Air Equipment (the "Master Service Contract"); 2) the Master Service Agreement between Air Equipment, as Contractor, and Swift, as Company (the "MSA"); or 3) Commercial General Liability Policy CGL 212768, issued by Mid-Continent to Air Equipment (the "Policy"). Finding Swift to be covered as an additional insured under the Policy, we reverse.

I.

Swift leased and operated an oil drilling site which included Well No. 62. Swift hired Flournoy to drill the well. Flournoy requested that Air Equipment provide a casing crew to install casing at the site. Accordingly, Flournoy and Air Equipment entered into the Master Service Contract, dated June 1, 1991. Swift and Air Equipment entered into the MSA, dated February 1, 1992. Mid-Continent issued the Policy to Air Equipment with an effective policy period of January 1, 1996 to January 1, 1997.

On June 23, 1996, Lozano, who was serving in a supervisory role for Air Equipment, was injured on the drilling site when gas released from Well No. 62 ignited and exploded. Lozano sued Swift and Flournoy alleging that their negligence caused his injuries.[1]

In August 1996, Flournoy notified Mid-Continent of Lozano's lawsuit and requested that Mid-Continent assume Flournoy's defense and provide indemnity pursuant to the Master Service Contract. Mid-Continent complied. Shortly thereafter, Swift requested that Flournoy provide it with

---

[1]     Lozano did not sue Air Equipment, although the employer did not maintain workers' compensation insurance at the time of the accident and, therefore, there was no bar to Lozano's including Air Equipment as a defendant.

a defense and indemnity for the Lozano litigation. Flournoy forwarded Swift's demand to Mid-Continent. Mid-Continent agreed to provide Swift with a defense.

However, in August 1997, Mid-Continent advised Flournoy and Swift that it would no longer provide a defense and indemnity in light of the Fifth Circuit's decision in *Greene's Pressure Testing and Rentals, Inc. v. Flournoy Drilling Co.*, 113 F.3d 47 (5th Cir. 1997), which held that indemnity language identical to that contained in the Master Service Contract was unenforceable under the Texas Oilfield Anti-Indemnity Act, Tex. Civ. Prac. and Rem. Code Ann. §§ 127.001-.007 (the "TOAIA" or "Act"). Swift argued that it was entitled to indemnity under the MSA, which contained different indemnity language, and as an additional insured under the Policy. Mid-Continent maintained it owed Swift neither a defense nor an indemnity, and provided neither.

In September 1997, Mid-Continent filed this declaratory judgment action seeking a clarification of its obligations to Swift and Flournoy under the Master Service Contract, the MSA, and the Policy. Meanwhile, Flournoy and Swift's liability carriers settled the Lozano lawsuit.

In November, 1998, the district court entered summary judgment for Mid-Continent with regard to both Swift and Flournoy.[2] The court held that the Master Service Contract was unenforceable under the TOAIA.[3] The district court also found that the MSA was unenforceable under the TOAIA. It added that, even if the MSA was enforceable, it was inapplicable because Lozano was not working for Swift at the time of the accident. The district court also found that Swift

---

[2]     Flournoy did not oppose Mid-Continent's motion for summary judgment and does not contest the summary judgment against it on appeal. Certain intervening parties had previously been dismissed without objection; those dismissals also are not before us. Swift was the sole remaining active defendant before the district court at the time of the summary judgment against it and is also the sole appellant.

[3]     This holding is clear from *Greene's* and is not contested on appeal.

-3-

did not qualify as an "additional insured" under the Policy, as Swift's liability did not "arise out of [Air Equipment's] ongoing operations for [Swift]," as the Policy's language required. Finally, the district court refused to consider Swift's claim that Mid-Continent should be waived or estopped from asserting its policy coverage defense. It noted that waiver and estoppel are affirmative defenses which must be asserted in a party's answer, *see* Fed. R. Civ. P. 8(c); *id.* R. 12(b), that Swift had failed to assert these defenses in its answer, and that Swift's motion to amend its answer to include waiver and estoppel had been properly denied as untimely.

On appeal, Swift claims that the district court erred in 1) finding that Swift was not entitled to indemnity under the MSA; 2) denying Swift coverage as an "additional insured" under the Policy; and 3) denying Swift leave to add its waiver and estoppel claims to its answer. Because we find that Swift was entitled to coverage as an "additional insured" under the Policy, we find it unnecessary to consider the district court's other holdings.[4]

## II.

We review the district court's determination that Swift was not covered as an "additional insured" under the Policy *de novo*. *See National Union Fire Ins. Co. of Pittsburgh, Penn. v. Kasler*, 906 F.2d 196, 197 (5th Cir. 1990) ("The interpretation of an insurance contract, including the question

---

[4] The indemnity provision in the MSA specifically limits the indemnity obligations imposed under the MSA to the amount of insurance maintained by Air Equipment under the Policy. Thus, there is no separate claim for indemnity under the MSA beyond the $1 million limit contained in the Policy. Finding that Swift is entitled to recover as an additional insured under the Policy therefore renders it unnecessary to consider whether Swift was entitled to indemnity under the MSA. Swift's pleadings acknowledge this fact.

As Swift's claims of waiver and estoppel, even if successfully asserted, could have led to no greater recovery than that available as an additional insured under the Policy, it is also unnecessary for us to consider the district court's holdings with regard to those claims.

of whether the contract is ambiguous, is a legal determination meriting de novo review.").

In this diversity action, we must apply Texas law as interpreted by Texas state courts. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In Texas, insurance policies are contracts and are controlled by rules of contract construction. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W. 2d 663, 665 (Tex. 1987). In interpreting a policy, the court's primary focus is to ascertain the true intent of the parties as expressed in the written document. *See National Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Industries, Inc.*, 907 S.W. 2d 517, 520 (Tex. 1995). If the language in a policy is "susceptible to more than one reasonable construction, it is patently ambiguous." *Barnett*, 723 S.W. 2d at 666; *see also CBI*, 907 S.W. 2d at 520. A policy may be ambiguous even if its language is definite, if "the meaning and scope of the language is ambiguous." *Barnett*, 723 S.W. 2d at 666 (holding that an insurance policy was ambiguous with regard to whether it included VA benefits); *see also CBI*, 907 S.W. 2d at 520 (noting that latent, as opposed to patent, ambiguity arises when contract is ambiguous as applied to its subject matter). The question of whether a policy is ambiguous, as with other questions of policy construction, is a question of law for the court. *See CBI*, 907 S.W. 2d at 520; *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W. 2d 451, 453-54 (Tex.App.—Houston [1st Dist.] 1999, pet. denied, Feb. 10, 2000).

In Texas, when an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern. *See Gonzalez v. Mission Am. Ins. Co.*, 795 S.W. 2d 734, 737 (Tex. 1990); *Glover v. National Ins. Underwriters*, 545 S.W. 2d 755, 761 (Tex. 1977); *Admiral*, 988 S.W. 2d at 454. Exceptions or limitations on an insurer's liability are construed "even more stringent[ly]." *Barnett*, 723 S.W. 2d at 666 (holding that construction of exclusionary clause urged by insured must be accepted so long as it is "not unreasonable," even if insurer's construction seems

"more reasonable or a more accurate reflection of the parties' intent").

Form B of the Policy, the "additional insured" provision, provides in part:

**SCHEDULE**

**Name of person or organization**:

Any person or organization for whom the named insured has agreed by written "insured contract" to designate as an additional insured subject to all provisions and limitations of this policy. . .

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

The named insured under the Policy is Air Equipment. Mid-Continent presents several arguments to support its position that Swift is not an "additional insured" under the Policy. First, Mid-Continent argues that the MSA is not an "insured contract" under the Policy, because it is neither enforceable nor applicable. Second, Mid-Continent argues that the liability to Lozano 1) was not "arising out of" Air Equipment's ongoing operations and 2) even if "arising out of" Air Equipment's ongoing operations, did not arise out of ongoing operations "performed for" Swift. We consider each of these arguments in turn.

*A. MSA not an "Insured Contract"*

The Policy defines an "insured contract" to include, "That part of any contract or agreement pertaining to your business . . . under which you [Air Equipment] assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." In the MSA, Swift and Air Equipment each agree to defend and indemnify the other from any liabilities "arising directly or indirectly during or out of the performance of this Agreement," regardless of fault. Section 8 of the MSA, titled "Mutual Indemnity," adds that each party will provide equal amounts

-6-

of insurance coverage, as set forth in Exhibit C thereto,[5] to support the indemnities assumed in the Agreement. Section 9(A) of the MSA, titled "Insurance," again requires Air Equipment to carry the insurance coverage set forth in Exhibit C to support its Section 8 indemnity and liability obligations. Section 9(A) adds that the indemnity obligations of Air Equipment under the MSA are limited to the amount of supporting insurance obtained through the Policy. Section 9(B) further requires Air Equipment to add Swift as an additional insured on all insurance policies "for liabilities and indemnities assumed by" Air Equipment under the MSA. Thus, Swift claims, the MSA is clearly an "insured contract" within the meaning of the Policy.[6]

Mid-Continent makes two arguments in support of its claim that the MSA does not qualify as an "insured contract" under the Policy. First, Mid-Continent argues that the MSA is not an "insured contract" because its indemnity provisions are unenforceable under the TOAIA. Second, Mid-Continent argues that the MSA is not an "insured contract" because it is not applicable.

*1. MSA not an "insured contract" because its indemnity provisions are unenforceable*

We emphasize that Mid-Continent's first argument does not require us to determine whether Swift was entitled to indemnity under the indemnity provisions of the MSA. Rather, it requires us to answer the different question of whether Swift should be denied coverage as an additional insured under the Policy because the MSA is not an "insured contract." The presumptions involved in these different contexts are diametrically opposed. As the district court emphasized, under Texas law

---

[5]     The Policy was set forth in Exhibit C to the MSA.

[6]     It is not contested that, if the MSA is an "insured contract," it is an insured contract by which Swift was "designate[d] as an additional insured," as the Policy language requires.

-7-

indemnity agreements are strictly construed in favor of the indemnitor (here, Air Equipment). *See*

*Safeco Ins. Co. of America v. Gaubert*, 829 S.W. 2d 274, 281 (Tex.App—Dallas, 1992, writ denied).

By contrast, insurance policies are strictly construed in favor of coverage (for Swift). *See, e.g.,*

*Barnett*, 723 S.W. 2d at 666; *Kasler*, 906 F.2d at198 (applying Texas law). Here, as Mid-Continent

requests that we deny coverage under an insurance policy based on the term "insured contract" used

therein, we must construe that term broadly. We conclude that the TOAIA does not preclude the

MSA from being an "insured contract" under the Policy.

Even assuming that MSA were unenforceable under the TOAIA, it is highly unclear that the

MSA's status as an "insured contract" would be affected. *See* Douglas R. Richmond & Darren S.

Black, *Expanding Liability Coverage: Insured Contracts and Additional Insureds*, 44 DRAKE L. REV.

781, 793 (1996) ("There is a lack of case law addressing the effect of unenforceable indemnity

language on insured contract coverage."). Both sides have feasible arguments. Swift argues that Mid-

Continent intended to assume Swift's tort liability and thus that we should treat the MSA as an

"insured contract" within the context of interpreting the Policy. *See id.* ("An insured might argue that

because it intended to assume the indemnitee's tort liability, the insurer should still cover the subject

occurrence."); *see also id.* (noting that insurers should simply name the additional insured or otherwise

draft clear policy language if they wish to exclude an indemnity provision which proves unenforceable

from the definition of "insured contract"). On the other hand, if the indemnity provisions of the MSA

are unenforceable, Mid-Continent never actually assumed Swift's liabilities. Arguably, then, the MSA

would not qualify as an insured contract. *See id.* ("If, conversely, the sole coverage touchstone is the

existence of an insured contract . . . [u]nenfo rceable indemnity language in an incidental contract

should excuse the insurer's obligations. Assuming no assumption of tort liability exists, there can be

no insured contract coverage."). In light of the rule that ambiguous policy language is interpreted to find coverage, *see Gonzalez,* 795 S.W. 2d at 737, the lack of relevant precedent and the existence of strong opposing arguments appear to dispose of Mid-Continent's argument that the MSA is not an "insured contract," even if we grant the assumption that the MSA's indemnity provisions are invalid under the TOAIA.

Out of an abundance of caution, we nevertheless assume without deciding that, if the MSA's indemnity provisions were clearly invalid under or offensive to the TOAIA, it might affect the MSA's status as an "insured contract" under the Policy. We find that the MSA's provisions are not so clearly contrary to the TOAIA as to preclude the MSA from being an "insured contract."

The TOAIA generally voids indemnity provisions which purport to indemnify a party against liability caused by the indemnitee's negligence and arising from personal injury, death, or property damage. *See* Tex. Civ. Prac. and Rem. Code Ann.§ 127.003; *Greene's*, 113 F.3d at 50. However, the TOAIA contains an exception permitting indemnity provisions supported by liability insurance satisfying section 127.005. *See Greene's*, 113 F.3d at 50. Section 127.005 states that "mutual indemnity obligations" are valid if supported by, and limited to, "equal amounts" of insurance coverage provided by each party to the other. § 127.005(a)-(b). In *Greene's*, the indemnity obligations were supported only by "*available* liability insurance" (emphasis added), which did not satisfy Section 127.005. *Greene's*, 113 F.3d at 50-51. Thus, the indemnity provisions were held invalid under the TOAIA. *See id.* at 51-52.

The MSA's language reflected the holding in *Greene's*. It provided that each party would "provide equal amounts of insurance . . . to support the indemnities voluntarily assumed in this Agreement." The MSA also expressly limited each party's indemnity obligation to the amount of

supporting insurance that party was required to carry. Each party in fact obtained the insurance mandated by the MSA. Therefore, *Greene's* is not controlling. The MSA appears to comply with Section 127.005.

The district court nevertheless held, in addressing Swift's claim for indemnity under the MSA, that the MSA's indemnity provisions violated the TOAIA.[7] It noted that the language of the MSA required Air Equipment to indemnify Swift, "its parent, subsidiaries, affiliates, and partnerships, and its and their respective officers, directors, employees, and insurers and those with whom Company, its parent, subsidiaries, affiliates, and partnerships may be associates as co-lessees, partners, or joint venturers (hereinafter collectively referred to as 'Company Group')." But Swift was only required to indemnify Air Equipment, "its parent, subsidiaries, affiliates, and partnerships, and its and their respective officers, directors, employees, and insurers (hereinafter collectively referred to as 'Contractor Group')." The district court, noting that the listed Company Group included certain entities not listed in the Contractor Group, found that the indemnity obligation in the MSA is "not mutual" because "Air Equipment is required to provide indemnity for a greater group of entities than is Swift."

We need not decide on the district court's holding that Swift was not entitled to indemnity

---

[7] The district court never reached the MSA's enforceability under the TOAIA in the context of analyzing whether the MSA qualified as an "insured contract." In fact, it did not address the "insured contract" issue at all. In less than a page, the court disposed of Swift's claim as an "additional insured" on different grounds. *See infra* at subsection B (assessing district court's decision that Swift was not an "additional insured" because the liability to Lozano was not "arising out of [Air Equipment's] ongoing operations performed for [Swift]"). But Mid-Continent has presented both its arguments on the "insured contract" issue on appeal.

-10-

under the MSA.[8]  But the district court's reasoning is relevant to the question under consideration—whether the MSA is so clearly invalid under or offensive to the TOAIA that it cannot serve as an "insured contract" under the Policy.

The district court correctly noted that there was no case law supporting its decision that the MSA was "not mutual" and therefore invalid under the TOAIA.  A "mutual indemnity obligation" is defined in the TOAIA as "an indemnity obligation . . . in which the parties agree to indemnify each

---

[8]  Mid-Continent has not argued that the "additional insured" provision is directly invalidated by the TOAIA.  If raised, this argument would lack merit. *In Getty Oil Co. v. Ins. Co. of North America*, 845 S.W 2d. 794 (Tex. 1987), the Texas Supreme Court held that the TOAIA did not reach an "additional insured" provision even if the underlying indemnity agreement was void under the TOAIA. *See id.* at 803-04 ("additional insured" provision is a separate obligation that does not "directly support" an indemnity agreement, and therefore is not subject to the TOAIA); *id.* at 808 n.2 (Gonzales, J., concurring and dissenting) ("[T]his court has determined that an additional insured provision is not covered by the Anti-Indemnity statute.").  We followed *Getty* in *Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255 (5ᵗʰ Cir. 1998), holding that the TOAIA did not reach an additional insured provision even if the underlying indemnity contract, which expressly required that Oryx be named as an "'additional insured . . . to the extent of the indemnity,'" *id.* at 258, was invalid under the TOAIA. *See id.* at 259-60.  Under *Getty* and *Oryx*, the "additional insured" provision of the Policy would not be invalidated by the TOAIA even if we found that the MSA was invalid.

As in *Oryx*, the MSA requires that Air Equipment "name Company [Swift] an additional insured, for liabilities and indemnities assumed by Contractor."  Mid-Continent apparently argued in the district court, based on the "for liabilities and indemnities assumed by Contractor" language, that the "additional insured" provision in the Policy does not apply if the MSA's indemnity provision is invalid under the TOAIA. *Oryx*, rejecting a similar claim based on nearly identical language in the indemnity contract, appears to preclude this argument. *See Oryx*, 142 F.3d at 258 (rejecting claimed limitation on "additional insured" coverage under policy, based on indemnity contract's requirement that Oryx be named an additional insured under policy "to the extent of the [unenforceable] indemnity," because "there is no justification for an argument that Texas courts would engraft a limit on coverage to match the Texas law defense as if the suit were only to enforce the indemnity itself").  Moreover, Mid-Continent's argument for a coverage limitation is based on the language in the MSA requiring that "additional insured" coverage be obtained.  But it is the Policy's language, not the language in the MSA, which governs the scope of the Policy.  As Mid-Continent's argument does not implicate the Policy's language, it clearly fails to establish a coverage limitation. *See, e.g.*, *Barnett*, 723 S.W. 2d at 666 (discussing stringent standard applied in interpreting claimed coverage limitations).

-11-

other and each other's contractors and their employees." Tex. Civ. Prac. and Rem. Code Ann.§ 127.003. We do not find anything in this wording, or in its legislative history, to warrant the district court's conclusion that complete identity of indemnitees is required to satisfy the TOAIA.[9]

Moreover, we believe that, as a factual matter, the district court's reading of the TOAIA might be unworkable. It is Swift's uncontroverted claim that 1) by industry practice, parties to contracts and subcontracts in a drilling situation attempt to fully indemnify each other, and 2) the operator group in a drilling situation will always be larger than the contractor group. Thus, if full mutual indemnification is to occur, the contractor will always be required to indemnify a larger group of parties than the operator. The district court's holding that such indemnification is *by definition* "not mutual" and therefore impermissible under the TOAIA appears to preclude indemnification in most, if not all, drilling situations in which such indemnification is now customary. In the absence of supporting authority, we decline to reach this seemingly radical result, particularly in the context of deciding whether the MSA is an "insured contract."

In this case, the difference between the two indemnification provisions is that Air Equipment is forced to indemnify Swift's "co-lessees, partners, or joint venturers." Swift notes that only the operator would ever have "co-lessees, partners, or joint venturers" in the performance of the drilling

---

[9]     The district court did not provide any legislative-history rationale for its holding. Mid-Continent notes that the purpose of the TOAIA was to address inequities in indemnity agreements in the drilling context, *see Oryx*, 142 F.3d at 259, and argues that the MSA is so inequitable that the TOAIA invalidates it. But the MSA's language, which complies with *Greene's*, is not necessarily inequitable. The economic realities of the drilling industry appear to dictate that the operator group, consisting of the operator and the other parties with which it contracts, will always be larger than the contractor group. This imbalance cannot be addressed *within* a full-indemnification contract. Yet both parties to the MSA, and to other similar contracts, nevertheless freely agreed to fully indemnify each other's group. Each party had strong reasons for pursuing such indemnification, in light of the complexity and uncertainty involved in drilling operations. Mid-Continent's argument does not persuade us that the MSA cannot serve as an "insured contract."

-12-

operations covered under the MSA. To include this extra language purportedly assuring absolute mutuality in delineating Swift's obligations to Air Equipment would be practically meaningless; to delete it from Air Equipment's obligations to Swift would run counter to apparently-reasonable industry practice.[10]

In sum, we believe that finding the MSA to be barred by the TOAIA and therefore not an "insured contract" under the Policy: 1) would run afoul of the presumption in favor of interpreting ambiguous insurance policy language (here, "insured contract") so as to find coverage; 2) is not sufficiently supported by the TOAIA, its legislative history, and related case law; and 3) seems imprudent as a policy matter. Therefore, we decline to find that the TOAIA precludes the MSA from being an "insured contract" under the Policy.

### 2. *MSA not an "insured contract" because it is not applicable*

Mid-Continent also argues that the MSA is not an "insured contract" under the Policy because it is not applicable. Mid-Continent claims that the MSA's provisions were "never triggered" because Air Equipment was working for Flournoy rather than Swift at the drilling site.

It is unclear whether the "applicability" of the MSA, as defined by Mid-Continent, is even relevant to the question of whether the MSA was an "insured contract." Under the MSA, Air Equipment agreed to assume Swift's liability. Therefore, it appears that upon its execution by both

---

[10]  Mid-Continent makes a related argument on which the district court did not rely: that the parties Air Equipment is required to indemnify are not Swift, its "contractors," and their "employees," as required by the TOAIA. *See* § 127.003 ("mutual indemnity obligation" defined as when the parties "agree to indemnify each other and each other's contractors and their employees"). This is not compelling. Swift will clearly have contracts with any "co-lessees, partners, and joint venturers" in its drilling operations governed by the MSA. Mid-Continent presents no authority to support the construction that those parties are nevertheless not "contractors" under the TOAIA. Accordingly, we are not persuaded to deny coverage.

-13-

parties the MSA became an "insured contract" under the Policy. The "insured contract" language in the Policy does not contain any limitations regarding the "applicability" of the indemnity contract (here, the MSA), or requiring that performance under the contract have begun at the time of the accident triggering liability. Moreover, Mid-Continent fails to present any authority showing that an indemnity contract must be "applicable" in order for the contract to qualify as an "insured contract" under an insurance policy. Mid-Continent also fails to support its implicit definition of an "applicable" contract as one under which performance had begun at the time the liability arose. In fact, Mid-Continent does not support its "inapplicability" argument at all, beyond arguing for the underlying predicate that Air Equipment in fact was performing for Flournoy rather than Swift.[11] We find that the "insured contract" provision is *at best* ambiguous with regard to Mid-Continent's claim. We thus must apply the presumption that the provision be interpreted to provide coverage. *See Glover*, 545 S.W. 2d at 761. Therefore, the MSA is not denied status as an "insured contract" under the Policy because it is "inapplicable".

Finding Mid-Continent's two arguments unavailing, we hold that the MSA was an "insured contract" under the Policy.

*B. Liability to Lozano not "arising out of [Air Equipment's] ongoing operations performed for [Swift]"*

The "additional insured" endorsement in the Policy states that additional insureds are included

---

[11]    Even if Mid-Continent had shown that the "applicability" of the MSA determined its status as an insured contract, and even if we accepted Mid-Continent's definition of an "applicable" contract as one under which performance had begun, we would nevertheless reject Mid-Continent's conclusion that the MSA was "inapplicable." We do not agree that, under the Policy, Air Equipment unambiguously was not working for Swift at the time of the accident. We analyze this question in the context of deciding whether the liability to Lozano "arose out of" Air Equipment's "operations performed for" Swift.

as insureds "only with respect to liability arising out of [Air Equipment's] ongoing operations performed for that insured." The district court relied on this language in denying Swift additional insured coverage. It held that Swift was not an "additional insured" under the Policy because Swift's liability to Lozano was not a "liability arising out of [Air Equipment's] ongoing operations performed for" Swift.[12]

Mid-Continent's argument with regard to the "ongoing operations performed for" language is conceptually best separated into two arguments: 1) Lozano's injuries did not "arise from" Air Equipment's operations at all, because Lozano's injuries were not the result of Air Equipment's negligence; 2) even if Lozano's injuries did arise from Air Equipment's operations, those operations were not being "performed for" Swift, but rather for Flournoy. We reject both of these arguments.

### 1. Liability to Lozano not "arising out of [Air Equipment's] ongoing operations"

First, Mid-Continent argues that the limitation "arising out of your ongoing operations" indicates that the additional insured endorsement applies only to liability resulting from the negligence of Air Equipment, and excludes liability arising out of the independent negligence of the additional insureds.[13] Mid-Continent bases its argument on *Granite Constr. Co. v. Bituminous Ins. Co.*, 832 S.W. 2d 427 (Tex.App.) ) Amarillo, 1992, no writ).[14] As here, *Granite* concerned a services contract

---

[12]  The district court did note that it was "undisputed that Lozano, as Air Equipment's employee, was performing work or services on Swift's property." Thus, the "ongoing operations" language is not an issue.

[13]  The Policy does not define the phrase "arising out of your ongoing operations," or *any* part thereof.

[14]  While Mid-Continent raised this *Granite*-based argument separately in the district court, the district court did not rely on it in finding that Lozano's injuries did not "arise from [Air Equipment's] operations performed for [Swift]." Indeed, the district court did not mention *Granite* in its opinion. The district court instead relied upon the argument that Air Equipment's operations

by which an independent contractor agreed to insure the other party as an additional insured. Pursuant to its contract to remove asphalt from Granite's construction site, Joe Brown Company ("Brown") named Granite an additional insured under its insurance policy, "but only with respect to liability arising out of operations performed for such insured [Granite] by or on behalf of the named insured [Brown]." *Id.* at 428. A Brown employee, injured when his truck overturned, sued Granite, claiming that Granite's negligence in loading the truck caused his injury. *See id.* The court denied coverage to Granite under the additional insured endorsement. *See id.* at 430. It emphasized that, under the underlying services contract, the loading operation was designated Granite's sole responsibility. *See id.* As the employee's allegations arose from the loading operations, in which Brown had no role, it did not "arise out of" Brown's operations. *Id.* The additional insured endorsement therefore did not apply. *See id.*

*Northern Ins. Co. of New York v. Austin Commercial, Inc.*, 908 F. Supp. 436, 437 (N.D. Tex. 1994), applying Texas law, interpreted *Granite* to require a claim of direct negligence against the named insured in order to trigger coverage under an additional insured provision. Mid-Continent claims that *Northern* accurately interprets Texas law. As it is not disputed that Air Equipment was not negligent, Mid-Continent claims, the additional insured provision does not cover the liability to Lozano. We disagree.

*Granite* was rejected in *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W. 2d 451 (Tex. App—Houston [1ˢᵗ Dist.], 1999, pet. denied, Feb. 10, 2000). In *Admiral*, K-D Oilfield Services ("KD") contracted to provide crews to service Trident's facility. Pursuant to the services agreement,

---

were "performed for" for Flournoy, not Swift. Mid-Continent nevertheless renews the *Granite*-based argument separately on appeal.

KD included Trident as an additional insured on its policy from Admiral, "'*but only with respect to liability arising out of the named insured's [KD's] operations.*'" *Id.* at 452, 454 (emphasis in original). A KD employee, preparing to perform maintenance on one of Trident's compressors, was injured when it exploded. *See id.* at 453.

Admiral noted that KD was not negligent and that neither KD nor any of its employees in any way caused or contributed to the explosion. *See id.* at 454. Relying on *Granite*, it argued that the injury therefore did not "arise out of" KD's operations and was not covered under the additional insured endorsement. *See id.* Trident argued that the term "arising out of" was not limited to instances in which the named insured was directly negligent. Rather, it was intended to cover all claims with a cause-in-fact relationship to the named insured's (KD's) operations. *See id.* ("Trident argues that the term 'arising out of the named insured's [KD's] operations' was meant to provide Trident coverage for any claim that had a logical cause-in-fact connection with KD's operations.") Trident noted that the accident occurred while the KD employee was on Trident's premises as part of a service crew provided by KD. *See id.* It argued that the claim was therefore sufficiently connected to KD's operations to be covered under the additional insured endorsement.

The court agreed with Trident. It explained that the issue had been considered by numerous courts nationwide, and that Trident's was the majority view. *See id.* ("Trident relies on several cases from around the country construing almost identical 'additional insured endorsement' language. The majority view of these cases is that for liability to 'arise out of operations' of a named insured it is not necessary for the named insured's acts to have 'caused' the accident; rather, it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional

-17-

insured."). *See also, e.g., McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 253 (10th Cir. 1993) (finding city covered as additional insured with regard to injury suffered at festival because injury "arose out of" festival company's operations, even though city stipulated that it alone was negligent); *Merchants Ins. Co. v. U.S. Fidelity & Guar. Co.*, 143 F.3d 5, 9-10 (1st Cir. 1998) (finding general contractor covered as additional insured with regard to injury suffered by subcontractor's employee because injury "arose out of" subcontractor's operations, even though injury was due to the general contractor's negligence); Douglas R. Richmond, *The Additional Problems of Additional Insureds*, 33 Tort & Ins. L.J. 945, 956-65 (1998) (addressing coverage for additional insured's sole negligence and noting that *McIntosh*'s liberal interpretation is "fast becoming the majority rule", particularly under "broad 'arising under' language").

The *Admiral* court also cited the Texas policy of finding coverage when the policy language is ambiguous. *See id.* at 455 (citing *CBI*, 907 S.W. 2d at 520). It held that, because the accident injured a KD employee on Trident's premises in connection with KD's business, it "arose out of" KD's operations and thus was covered by the additional insured endorsement. *See id.* The *Admiral* court expressly "disagree[d]" with *Granite* and *Northern*, "[t]o the extent to which they are contrary to this opinion. *See id.* at 454 n. 4.

The additional insured endorsements in *Granite* and *Admiral* are nearly identical to each other and to the endorsement at issue here. The only apparent way to distinguish the two cases is to find that *Granite* relied on the fact that the underlying service contract expressly pinned sole responsibility for the loading operations during which the Brown employee was injured on Granite. If *Granite* depended on this fact, we would follow *Admiral* here. Mid-Continent has not argued that the MSA expressly divides responsibility for different operations amongst the parties and pins sole responsibility

-18-

for the operations during which Lozano was hurt on Swift, and the MSA would not appear to support such an argument.[15] It does appear that Lozano was injured while on Swift's premises for the purpose of helping to perform Air Equipment's business. This is the exact factual scenario present in *Admiral*, such that the precise holding of *Admiral* applies. In sum, while we are not required to decide whether *Granite* and *Admiral* are distinguishable, if they are, *Admiral* would govern under these facts.

In *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W. 3d 725 (Tex. App—Austin, 1999, no pet. h.), another Texas appellate court was presented with the question of whether an injury to the named insured's employee "arose out of" the named ensured's operations even if due to the sole negligence of the additional insured. *See id.* at 730. In finding that the additional insured endorsement did apply, *id.*, the court followed *Admiral* rather than *Granite*. *See id.* at 729 (quoting *Admiral* extensively and noting that *Admiral* was "in harmony with interpretations given to 'arising out of' in various jurisdictions.").

In addition to *Admiral*, the *McCarthy* court relied heavily on the Texas Supreme Court's recent "broad construction [of] the phrase 'arising out of'" in a different insurance context. *Id.* at 729. In *Mid-Century Ins. Co. v. Lindsey*, 997 S.W. 2d 153, 156 (Tex. 1999), while attempting to get into his parents' truck through a sliding rear window, a boy accidentally touched a loaded shotgun on a gun rack mounted over the window and shot a man sitting in an adjacent parked car. *See id.* at 154. The relevant insurance policy provided coverage for injuries "arising out of" the use of a motor vehicle.

---

[15]     The MSA defines the "work" and "services" to be provided by Air Equipment ("Contractor") to Swift ("Company") as any "business activity of Contractor which requires that its employees . . . enter upon or utilize any property or premises owned (in whole or in part), leased, chartered, or operated by Company." Therefore, as Lozano was an Air Equipment employee on premises leased by Swift, the work he was performing appears by definition to have been Air Equipment's work under the MSA.

*Id.* at 155. The court found coverage. *See id.* at 158-59. It noted that the "arising out of" language required "a causal connection or relation" between the accident and the use of the vehicle. *Id.* at 156. However, as the *McCarthy* court noted, the required causal connection was not direct: "the direct cause of the injury stemmed from the boy's conduct in touching the gun." *McCarthy*, 7 S.W. 3d at 729.

In *McCarthy*, an employee of Crouch, the named insured, was injured as a result of the negligence of McCarthy, the additional insured. *See id.* at 725-26. The insurance company suggested that the liability "cannot extend to negligence caused solely by McCarthy." *Id.* at 730. This is the prevailing interpretation of *Granite* and *Northern*. The court responded: "Post-*Lindsey*, such a restrictive interpretation no longer appears reasonable in Texas and cannot be used to create ambiguity." *Id.*[16] The court added in a footnote that it "decline[d] to follow" *Granite*, in part because *Granite* was decided prior to *Lindsey*. *Id.* at 730 n. 9.

The court noted that the injured worker was at a construction project managed by McCarthy "for the purpose of carrying out Crouch's contract with McCarthy." *Id.* at 730. It found that this was the requisite "causal connection" between the injury and Crouch's work, such that the injuries "arose out of" Crouch's work for McCarthy. *Id.* at 730. Therefore, McCarthy was covered under the additional insured provision even if its sole negligence directly caused the liability. *See id.*

Even assuming that there is a direct conflict between *Granite* and *Admiral* and/or *McCarthy*, we are required to determine what the Texas Supreme Court would hold. *See Erie,* 304 U.S. 64. We believe the Texas Supreme Court would follow *Admiral* and *McCarthy*. They are consistent with the

---

[16] The court noted that, even if the insurance company could create ambiguity, it would still lose.

majority view in other jurisdictions. They are far more thoroughly reasoned. They comport with the Texas Supreme Court's recent decision in *Lindsey*. And they are far more consistent with the general principles of Texas insurance law. Mid-Continent could have expressly stated in the Policy that liability not resulting from Air Equipment's sole negligence was not covered by the additional insured endorsement. It did not do so. To read such an additional limitation into the Policy's language clearly seems contrary to the Texas rule that exclusionary language is narrowly interpreted, *see Barnett*, 723 S.W. 2d at 666, and to the rule that ambiguous policy language is interpreted to find coverage, *see Gonzalez*, 795 S.W. 2d at 737.

Here, when injured, Lozano was an Air Equipment employee on Swift's premises in connection with Air Equipment's operations. Under *Admiral* and *McCarthy*, Lozano's injuries therefore "arose out of" Air Equipment's operations. We reject Mid-Continent's argument and hold that Swift is covered as an additional insured under the Policy even though Air Equipment was not negligent.

### 2. *Liability to Lozano not arising out of operations "performed for" Swift*

Mid-Continent argues that Lozano and Air Equipment were performing work or services for Flournoy, not for Swift, at the time of the accident. Mid-Continent's argument relies on Section 1 of the MSA, entitled "WORK OR SERVICES COVERED." Section 1(A) begins by noting that "It is contemplated that from time to time . . . [Company] may request either orally or in writing that Contractor perform work or render services for the benefit or account of Company. In the event that Contractor agrees to undertake the performance of such work or services for Company, then the provisions of this Agreement shall govern." Section 1(D) adds that it is "the intent hereof that neither Company nor Contractor shall be bound by the terms hereof until work or services have been

-21-

authorized by the Company and accepted by the Contractor." It is not disputed that it was Flournoy, not Swift, who called Air Equipment to request casing services. Flournoy was billed for, and paid for, Air Equipment's services.

The district court discussed this information in the context of determining whether Swift was entitled to indemnity under the MSA. Interpreting the language of Section 1 of the MSA to require that it be triggered by Swift's direct request for Air Equipment's services, the court concluded that "Air Equipment was not requested by Swift to perform the casing work at the drilling site." Having noted that indemnity agreements in Texas are construed in favor of the indemnitor (Air Equipment), *see Safeco*, 829 S.W. 2d at 281, the district court concluded that the MSA's indemnity provisions did not protect Swift. We need not assess that conclusion.

But the district court relied exclusively on its discussion of the indemnity question in assessing the "performed for" language of the Policy's additional insured provision. In rejecting Swift's additional insured claim, the court noted the "ongoing operations performed for" limitation and simply stated, "As discussed above, it is uncontroverted that Swift's liability did not arise out of Air Equipment's ongoing operations performed for Swift." Without further explanation, the court concluded, "therefore, Swift does not qualify as an additional insured for the purposes of Lozano's injury and lawsuit." Clearly, in deciding the additional insured issue, the district court relied on its finding that Swift was not protected by the MSA because it had not directly requested Air Equipment's services.

The district court's approach is problematic in at least two ways. First, the MSA's language is not directly relevant to the proper interpretation of the Policy. Thus, the conclusion that the MSA's language requires a direct request from Swift to Air Equipment does not mean that a similar

-22-

requirement should be read into the "ongoing operations performed for [Swift]" language in the Policy. The district court therefore erred in holding that the conclusion that the indemnity provisions of the MSA did not apply to Swift's liability to Lozano disposes of the question of whether Swift's liability "arose out of Air Equipment's ongoing operations" for Swift under the Policy. Second, the district court magnified its error by failing to consider that the presumptions involved in interpreting the indemnity provision and the additional insured provision are diametrically opposed. The district court noted, and apparently relied on, Texas law's strict construction of indemnity agreements in favor of the indemnitor (Air Equipment). *See Safeco*, 829 S.W. 2d at 281 (cited by the district court). But the court failed to note, and apparently to consider, Texas law's expansive construction of insurance provisions in favor of the insured (Swift). *See Barnett*, 723 S.W. 2d at 666; *Kasler*, 906 F.2d at 198.

We therefore reject the district court's conclusion. We find that Swift should not be denied coverage as an additional insured under the Policy because the liability to Lozano did not arise from Mid-Continent's operations "performed for" Swift. Clearly, Air Equipment's services were ultimately performed to benefit Swift. Air Equipment may have contracted directly with Flournoy, but Flournoy was merely Swift's subcontractor, such that all of Flournoy's operations were performed on Swift's premises for Swift's benefit. Given the absence of other applicable limiting language in the Policy (in contrast to the MSA), this fact alone likely is sufficient to find that Air Equipment's operations were "performed for" Swift.

Moreover, there is other substantial evidence in the record suggesting that Air Equipment's operations were "performed for" Swift. First, it is uncontroverted that, at the time of the accident, the well-operations had converted over to a day-work basis. After the day-work conversion, Swift began to directly control the details of the work. It seems clear that, at this time, Air Equipment was

performing services directly for Swift.

Second, other parts of the record confirm the substantial role Swift, through its on-site representative, James Barnett, had in directing and controlling Air Equipment's work. One Mid-Continent internal memorandum discusses an interview with James Solomon of Air Equipment. The memorandum states that, "according to Solomon, James Barnett had instructed the Flournoy tool pusher and Lozano to install the casing" before the accident. Oscar Lozano's deposition testimony confirms the memorandum by stating that it was Barnett who told Lozano to begin his work—specifically, to begin running the surface casing on the well. Lozano relates another episode in which Barnett came to Lozano at the well site and began questioning Lozano about the quality of Lozano's "stabber." Barnett expressed concern about the stabber's qualifications and about the fact that Barnett had rarely seen the stabber on the site. When the conversation did not satisfy Barnett, Barnett directed Lozano to obtain another stabber, and Lozano agreed. Lozano's testimony provides no evidence of Flournoy's involvement in Air Equipment's work beyond the initial summoning phone call; it clearly suggests that Barnett was the primary supervisor of Air Equipment's services on the well-site. Correspondingly, Lozano termed the job he was doing "a Swift job," and added that "the company man [Barnett] is in charge" of the whole location.

In sum, we find sufficient evidence that Air Equipment's operations were "performed for" Swift that the "performed for" language in the Policy is at least ambiguous with regard to coverage of the liability to Lozano. We therefore interpret the language to find coverage, and find that the liability to Lozano did arise out of Air Equipment's operations "performed for" Swift under the Policy.

III.

The district court erred in denying Swift coverage as an additional insured under the Policy.

We therefore REVERSE the decision of the district court granting summary judgment to Mid-Continent and REMAND with instructions to enter summary judgment for Swift on its claim as an additional insured under the Policy, and for any other proceedings not inconsistent with this opinion.