# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 6, 2010

No. 07-20157

Lyle W. Cayce
Clerk

TRAVELERS LLOYDS INSURANCE CO.,

Plaintiff–Appellee,

v.

PACIFIC EMPLOYERS INSURANCE CO.,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before GARZA, STEWART, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Pacific Employers Insurance Company (Pacific) appeals the district court's denial of its motion for summary judgment and grant of summary judgment in favor of Travelers Lloyds Insurance Company (Travelers). We reverse and remand.

**I**

The Centre at Bunker Hill, Ltd. (The Centre), as landlord, and Best Buy Stores, Inc. (Best Buy), as tenant, executed a lease pertaining to Best Buy's store located on The Centre's property. Article 22 of the lease was entitled "Insurance and Indemnity" and included two provisions at issue here:

No. 07-20157

## 22 INSURANCE AND INDEMNITY

**22.1 Tenant's Insurance.**  Tenant shall obtain and keep in force at Tenant's expenses [sic] . . . commercial general liability insurance with a combined single limit of Five Million and No/100 Dollars ($5,000,000.00) for each occurrence (including coverage under so-called "umbrella" or "excess liability" policies). Said insurance shall name Tenant as named insured and Landlord as additional insured. . . . Tenant may self-insure all or any part of the insurance it is required to carry hereunder, provided that Tenant or Guarantor maintains a minimum net worth of at least $100,000,000. . . .

. . . .

**22.3**  Tenant shall indemnify and hold Landlord and Landlord's agents harmless from and against any and all claims, actions, demands, liens, costs, damages, expenses and liabilities whatsoever including, but not limited to, attorneys' fees and court costs, arising out of any claims of any person or persons on account of or by reason of: (a) any occurrence in, on or about the Premises from the Delivery Date until Tenant fully vacates the Premises resulting from the occupancy or use thereof; (b) the negligence or willful misconduct of Tenant, its agents, employees and contractors in, on or about the Premises and/or Shopping Center . . . .

Best Buy purchased from Pacific a one-year "Excess Commercial General Liability Policy" with a per-occurrence limit of $1,000,000 and an aggregate limit of $2,000,000 subject to a retained limit, or self-insured retention, of $200,000. The policy included an "Additional Insured Endorsement" that extended "additional insured" coverage to entities "[w]here required by written contract before the date of loss. . . . but only with respect to liability arising out of [Best Buy's] operations or premises owned or rented by [Best Buy]."

Scott Schneider was injured while exiting the Best Buy store located on The Centre's property.  At the time of the incident, Schneider was confined to a

2

wheelchair.  He alleged that he went to Best Buy to have speakers in his van repaired or replaced, and that while the work was underway, he was directed to exit the Best Buy store through a door located next to the installation bays.  He asserted that "immediately after he exited the store in his wheelchair, he turned his wheelchair to the left to begin down the sidewalk and was thrown off the curb and out of the wheelchair seriously injuring his femur and his hips." Schneider, his wife, and his daughter sued The Centre, Best Buy, and others in Texas state court alleging that the defendants' negligence and defects in the exit ramp, sidewalk, and curb outside the store caused his accident and subsequent injuries.

Travelers insured The Centre through a comprehensive general liability policy.  Travelers demanded that Best Buy and Pacific assume The Centre's defense and indemnify The Centre from further exposure, arguing that The Centre was an additional insured under the Pacific policy.  Pacific and Best Buy declined Travelers's demand.  Travelers subsequently settled the underlying action, paying $250,000 to the Schneiders and incurring approximately $273,000 in attorneys' fees and expenses.

Travelers sued Pacific and Best Buy in federal district court based on diversity jurisdiction seeking a declaration that Pacific was required to defend and indemnify The Centre against claims in the underlying action and requesting reimbursement for defense costs incurred.  Each party moved for summary judgment.

The district court granted Travelers's motion but denied Pacific's. Specifically, the district court held that (1) The Centre was an additional insured under the Pacific Policy; (2) the Pacific Policy was primary and Travelers was entitled as subrogee to recover from Pacific the settlement costs Travelers paid; and (3) Travelers as subrogee was entitled to recover its attorneys' fees and

No. 07-20157

expenses incurred while defending The Centre in the underlying action. Pacific appealed.

## II

We review de novo the district court's grant of summary judgment and apply the same legal standards as the district court.[1] Summary judgment is appropriate when the record discloses that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] Additionally, the district court's interpretation of an insurance contract is a question of law subject to de novo review.[3]

The parties agree that the applicable contracts are governed by Texas law. Under Texas law, insurance policies and indemnity agreements are contracts, and the general rules of contract interpretation apply.[4] An insurance policy's terms are unambiguous if they have definite and certain legal meaning.[5] If the terms are unambiguous, the court must enforce the policy according to its plain meaning.[6] The parties' disagreement regarding the extent of coverage does not create an ambiguity.[7]

---

[1] *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 262-63 (5th Cir. 2005).

[2] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[3] *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 99 F.3d 695, 700 (5th Cir. 1996) (applying Texas law).

[4] *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008); *see also Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004).

[5] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

[6] *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

[7] *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1261 (5th Cir. 1997).

4

### III

Pacific argues that The Centre is not an additional insured under the policy that it issued to Best Buy. The Pacific policy's "Additional Insured Endorsement" provides coverage for an additional insured only "[w]here [Best Buy is] required [to provide such coverage] by written contract before the date of loss." Section 22.1 of the lease agreement required Best Buy, as tenant, to obtain insurance and name The Centre as an additional insured or, if Best Buy maintains a net worth of at least $100,000,000, permits Best Buy to self-insure all or part of this requirement. To determine whether Best Buy has a valid contractual obligation to name The Centre as an additional insured, we must examine what is known under Texas law as the express negligence rule.[8]

A party may not obtain contractual indemnity for its own negligence under Texas law unless fair notice requirements are satisfied, which include the express negligence doctrine and the conspicuousness requirement.[9] Indemnity agreements must meet these requirements to ensure that the intent of the parties is clear and that the risk-shifting provisions are conspicuous.[10] The indemnity provision in the lease between Best Buy and the Centre is broad and would require Best Buy to indemnify The Centre from The Centre's own negligence. The parties agree that this aspect of the indemnity provision is void under Texas law because it does not satisfy the fair notice requirements.

---

[8] *See Atl. Richfield Co. v. Petroleum Pers., Inc.*, 768 S.W.2d 724, 725 (Tex. 1989) (explaining that "the express negligence test . . . provides that a party seeking indemnity from the consequences of its own negligence must express that intent in specific terms"); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987) (same).

[9] *Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.*, 263 S.W.3d 291, 296 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (citing *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) (explaining conspicuousness requirement) and *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (explaining express negligence doctrine)).

[10] *See id.*

No. 07-20157

Pacific contends that the lease's requirements regarding insurance for The Centre as an additional insured are similarly void because, Pacific argues, the requirement that Best Buy name The Centre as an additional insured solely supports the lease's indemnity provision. The Supreme Court of Texas has recognized that "the express negligence doctrine in Texas has been applied only to indemnity provisions, not insurance-shifting provisions."[11] Insurance procurement, or additional insured, provisions are subject to the express negligence doctrine only if they "directly support indemnity agreements."[12] A contract provision that extends direct insured status as an additional insured is deemed to be separate and independent from the indemnity agreement.[13]

The Texas Supreme Court has considered an "additional insured" provision similar to the one contained in Best Buy's lease with The Centre.[14] In *Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*, a service contract provided that Triple S was to procure insurance "'[i]ncluding coverage for contractual liability insuring the indemnity agreement,'" and that Triple S was to furnish certificates of insurance showing ATOFINA as an additional insured.[15] The Texas court held that this "brief statement" requiring Triple S to include ATOFINA as an additional insured was "clear enough" and sufficient "to extend insured status to ATOFINA for its own negligence."[16] The lease between Best

---

[11] *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 806 (Tex. 1992).

[12] *See id.* at 805-06.

[13] *See Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 670 (Tex. 2008).

[14] *See id.*

[15] *Id.* at 662-63.

[16] *Id.* at 670.

No. 07-20157

Buy and The Centre similarly required Best Buy to "name . . . Landlord [The Centre] as additional insured."

It is also instructive that the Texas Supreme Court in *Evanston Insurance* expressly disapproved of a lower court's decision in another case, *Emery Air Freight Corp. v. General Transport Systems, Inc.*,[17] in which the lower court had refused to enforce a contractual provision requiring one party to include the other as an additional insured.[18] The contractual provisions at issue in *Emery Air Freight* were similar to those before us in the present case.[19]

---

[17] 933 S.W.2d 312, 315 (Tex. App.–Houston [14th Dist.] 1996, no writ).

[18] *Evanston Ins. Co.*, 256 S.W.3d at 670 ("We disapprove the view that this kind of additional insured requirement fails to establish a separate and independent obligation for insuring liability.") (citing *Emery Air Freight Corp.*, 933 S.W.2d at 315).

[19] *See Emery Air Freight Corp.*, 933 S.W.2d at 315, construing the following contractual provisions:

> 7. Contractor shall obtain and maintain at its own expense insurance in such forms and minimum amounts as set forth below naming Emery as an additional insured. Contractor shall furnish Emery certificates from all insurance carriers showing the dates of expiration, limits of liability thereunder and providing that said insurance will not be modified on less than thirty (30) days' prior written notice to Emery.

> Minimum Limits of Insurance:
> A. Worker's Compensation-Statutory
> B. General Liability Insurance-$1 Million Combined Single Limit
> C. Automobile Liability-$1 Million Combined Single Limit

> If Contractor fails to obtain and maintain the insurance coverage set forth above, Emery shall have the right, but not the obligation, to obtain and maintain such insurance at Contractor's cost or, at its option, to terminate this Agreement for cause as provided in Section 9 hereof.

> 8. Contractor shall be solely responsible and liable for any and all loss, damage or injury of any kind or nature whatever to all persons, whether employees or otherwise, and to all property, including Emery shipments while in the Contractor's custody and control, arising out of or in any way resulting from the provision of services hereunder, and Contractor agrees to defend, indemnify and hold harmless Emery, its agents, servants, and employees from and against any and all loss and expense, including legal costs, arising out of

This circuit has upheld additional insured provisions despite void indemnity provisions present in the same contract.[20] In *LeBlanc v. Global Marine Drilling Co.*, a contract contained both an additional insured clause and a void indemnification clause.[21] The former clause stated, "[T]o the extent Subcontractor assumes liability hereunder, and agrees to indemnify Contractor, Contractor shall be named an additional insured in [certain] insurance policies."[22] In *LeBlanc*, we rejected the subcontractor's argument that, based on the text of the clause, the additional insured clause was contingent on a valid indemnification clause.[23] Instead, this court interpreted the contract as imposing two concomitant requirements—indemnification and insurance procurement—and stated "[i]f the parties had determined to condition [the contractor's] assured status upon the legal enforceability of the indemnity agreement, they very easily could have done so."[24]

Although it is not necessary that the additional insured provision and the contractual indemnity provisions be in separate paragraphs, those provisions are in separate paragraphs in the Best Buy lease, underscoring the distinct and

---

the provision of the services hereunder, by Contractor.

[20] *See, e.g.*, *Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255, 258-60 (5th Cir. 1998) (enforcing an additional insured provision and noting that "[t]here is no justification for an argument that Texas courts would engraft a limit on coverage to match the Texas law defense as if the suit were only to enforce the indemnity itself"); *see also Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 494 n.8 (5th Cir. 2000) (noting that an additional insured provision would be enforceable even if the underlying indemnity obligation were unenforceable under the Texas Oilfield Anti-Indemnity Act).

[21] 193 F.3d 873 (5th Cir. 1999).

[22] *Id.* at 875 (alteration in original).

[23] *Id.*

[24] *Id.*

independent nature of the indemnity obligation and Best Buy's obligation to name The Centre as an additional insured.

The district court properly concluded that the contractual provision requiring Best Buy to include The Centre as an additional insured under the policy procured from Pacific is enforceable.

**IV**

Because The Centre is an additional insured under the Pacific policy, the priority of coverage between the Pacific policy and the Travelers policy must be determined. Both policies contain "Other Insurance" provisions. The Pacific policy's "other insurance" clause reads:

> 4.    Other Insurance
>
> If other insurance is available to the insured for a loss we cover under this policy, this insurance is excess over that other insurance, unless that insurance is written specifically to apply in excess of the Limits shown in the Declarations.

The Travelers policy's "other insurance" clause reads:

> 4.    Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:
>
> a.    Primary Insurance
>
> This insurance is primary except when b. below applies . . . .
>
> b.    Excess Insurance:
>
> This insurance is excess over any of the other insurance; whether primary, excess, contingent, or on any other basis:
>
> . . . .

No. 07-20157

> (4) That is valid and collectible insurance available to you [The Centre] if you are added as an additional insured under any other policy.

We first consider Pacific's argument that the coverage it provided to The Centre as an additional insured should be treated as a pure excess insurance policy, in the nature of an umbrella policy, because the lease permitted Best Buy to self-insure all or part of its insurance obligation to The Centre, and Best Buy did in fact self-insure up to the amount of $200,000.

Pacific's position is not supported by Texas law. Texas courts have held that for purposes of applying "other insurance" clauses in insurance policies, a self-insurer does not provide "other insurance,"[25] and a self-insurer does not provide "valid and collectible insurance" within the meaning of an "other insurance" clause.[26] Best Buy's retention of the first $200,000 of liability under the Pacific policy does not constitute "other valid and collectible . . . insurance available to [The Centre]" within the meaning of the Travelers policy.

We must, therefore, determine how to apply the "other insurance" provisions in the two policies at issue. If the Travelers policy were the only policy available to The Centre, The Centre would be covered, and similarly, if the Pacific policy were the only policy available, The Centre would be covered. The question is how to determine whether one or both of the policies must respond when there are competing "other insurance" clauses in each policy. Generally,

---

[25] *See Hertz Corp. v. Robineau*, 6 S.W.3d 332, 335 (Tex. App.–Austin 1999, no pet.) ("Texas law has been clear for more than 40 years that self-insurance is not 'other insurance.'"); *Home Indem. Co. v. Humble Oil & Ref. Co.*, 314 S.W.2d 861, 865-66(Tex. App.–Dallas 1958, writ ref'd n.r.e.).

[26] *See Allstate Ins. Co. v. Zellars*, 462 S.W.2d 550, 552 (Tex. 1970) (agreeing that a self-insurer does not provide "valid and collectible insurance" within the meaning of an other insurance clause).

10

No. 07-20157

a Texas court determines whether it can harmonize the competing "other insurance" clauses or whether they conflict.[27]

In this case, the district court held that the "other insurance" clauses in the Travelers and Pacific policies were harmonious. The district court wrote:

> Reading together both policies, the Pacific Employers Policy states that it is excess "unless [the other] insurance is written specifically to apply in excess of the Limits shown in the Declarations." The Travelers Policy fits that exception: it is written specifically to apply in excess over any other insurance ("whether primary, excess, contingent or on any other basis") that is valid and collectible insurance to The Centre "if [The Centre] is added as an additional insured under any other policy." As observed above, The Centre was added as an "additional insured" under the Pacific Employers Policy, and the Travelers Policy is therefore excess to the limits of insurance provided for The Centre by the Pacific Employers Policy. The "other insurance" clauses of the two policies are not in conflict.

> Accordingly, the Pacific Employers Policy is primary and provides coverage on the underlying loss liability up to $1,000,000 to both its named insured, Best Buy, and its additional insured, The Centre, and the Travelers Policy, "written specifically" for excess coverage under these circumstances, is excess to the Pacific Employers Policy. Travelers is therefore entitled as subrogee to recover from Pacific Employers the costs paid to settle claims asserted against The Centre in the Underlying Action.

This reasoning, however, is contrary to Texas law. The Supreme Court of Texas long ago recognized that insurance policies have been written in many different forms in an effort to limit coverage or liability when more than one

---

[27] *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 585-87 (Tex. 1969) (noting that the court must consider "whether the two restrictive provisions conflict or can be harmonized").

No. 07-20157

policy may potentially cover a loss,[28] and conflicts between these provisions arise in a number of forms.[29]  The Texas court surveyed the efforts courts in other jurisdictions had made over the years to resolve or "harmoniz[e]" such provisions, noting the shortcomings of various approaches.[30]  One approach discussed and rejected by the Supreme Court of Texas was similar, if not identical, to that applied by the district court in this case.  The Texas court observed in *Hardware Dealers Mutual* that "[m]ost courts have concluded that a general escape clause must yield to the more specific excess clause,"[31] and this led to "many insurers redraft[ing] the wording of their general escape clauses in order to out-specific the specific excess clauses in other policies."[32]  The Texas Supreme Court also observed that some courts had "given controlling force to the specific escape clause over the excess clause."[33]  The Texas court declined to adopt interpretive methodologies such as these, explaining "[t]he fixing of liability by determining which of two specific clauses is the more specific is no

---

[28] *Id*. at 586 (describing at least three kinds of "other insurance clauses": "(1) A pro rata clause restricts liability upon concurring insurers to an apportionment basis.  (2) An excess clause restricts liability upon an insurer to excess coverage after another insurer has paid up to its policy limits.  (3) An escape clause avoids all liability in the event of other insurance.").

[29] *See id*. (identifying at least five categories of conflicts: "(1) One policy contains an excess clause and the other contains a pro rata clause, . . . (2) One policy contains a non-liability or escape clause and the other contains a pro rata clause, . . . (3)Both policies contain an excess clause, . . . (4) One policy contains an excess clause and the other a non-liability or escape clause, . . . (5) One policy contains what has been termed a specific escape clause which specifies the kind of 'other insurance,' the existence of which relieves the former insurer of liability . . . .").

[30] *See id*. at 586-89.

[31] *Id*. at 587.

[32] *Id*. at 588.

[33] *Id*.

better [than the prior-in-time or search-for-the-primary-tort-feasor methods].”[34] “Moreover, it encourages the continuing battle of draftsmanship of still more specific policy terms, and the end is not in sight.”[35]

Instead, the Texas Supreme Court held

> We, therefore, shall follow this rule: When, from the point of view of the insured, she has coverage from either one of two policies but for the other, and each contains a provision which is reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance, there is a conflict in the provisions.[36]

The Texas court concluded that coverage under both policies “is a reasonable result since both insurers wrote expanded coverage policies which they must have intended should reach [the insured].”[37]

With great respect to the district court, the “other insurance” clauses in the Travelers and Pacific policies could reasonably be construed to conflict. The Travelers policy states unequivocally that it is “excess over any of the other

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 589.

[37] *Id.* at 590.  The provisions at issue in *Hardwear Dealers Mutual* were as follows:

Farmers’ policy: ‘* * * However, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.’

Hardware’s policy: ‘* * * Any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person; * * *.’

*Id.* at 585-86.

insurance[,] whether primary, excess, contingent, or on any other basis," including specifically insurance available to The Centre as an additional insured under another policy. The Pacific policy expresses an intent that it is to be excess over other insurance "unless that insurance is written specifically to apply in excess of the Limits shown in the Declarations." The per-occurrence limit of the Pacific policy shown in the Declarations is $1,000,000, and the aggregate limits are $2,000,000. The Pacific policy seems to contemplate that "other insurance" means true "excess" or umbrella insurance. The phrase "unless that insurance is written specifically to apply in excess of the Limits shown in the Declarations" in the Pacific policy can reasonably be construed to mean that the Pacific policy is excess when other insurance is available unless the other insurance either specifically references the Pacific policy and states that it is excess to the Pacific policy, or the other insurance provides that it applies only as excess insurance above a stated dollar limit that is above per-occurrence and aggregate limits of $1,000,000 and $2,000,000, respectively. The Travelers policy does not refer to the Pacific policy by name nor does it contain any reference to specific dollar limits in the "other insurance" provision. The Pacific and Travelers "other insurance" clauses are the types of "other insurance" clauses identified by the Texas Supreme Court that cause confusion and reasonably appear to conflict. A reasonable construction of the Travelers policy is that it is excess to the Pacific policy. Likewise, the Pacific policy can reasonably be construed to provide that it is excess to the Travelers policy since the Travelers policy is not "written specifically to apply in excess of [$1,000,000 or $2,000,000]" as the Pacific policy requires.

Our court's decision in *Royal Insurance Co. of America v. Hartford Underwriters Insurance Co.*[38] also leads us to conclude that from the perspective

---

[38] 391 F.3d 639 (5th Cir. 2004).

of the insured, the "other insurance" clauses in the Travelers and Pacific policies reasonably conflict.  In *Royal Insurance*, our court cited a prior decision of this court[39] and reiterated the "caution[] against applying overly narrow constructions of *Hardware Dealers*."[40]  We construed "other insurance" provisions to conflict.[41]

The Centre has coverage under both the Travelers and Pacific policies, and because the "other insurance" provisions conflict, each insurer must share in the costs of underlying litigation against The Centre.

## V

The remaining question is how the cost of the settlement should be apportioned between Travelers and Pacific.  Under Texas law, coverage should be pro-rated between the two insurers proportionate to the coverage each policy provided.[42]  Since each provided an equal amount of coverage, each should share equally in the cost to defend[43] and settle all claims.  The district judge's memorandum and order reflects that both Pacific and Best Buy's counsel represented that Best Buy had satisfied the retention.  Accordingly, the costs above that self-retention should be pro-rated.

---

[39] *Id.* at 643 (citing *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 210 (5th Cir. 1996)).

[40] *Id.*

[41] *Id.* at 643-44; *see also Willbros RPI, Inc. v. Continental Cas. Co.*, No. 08-20665, 2010 WL 924703, at *5 (5th Cir. Mar. 16, 2010) (holding that "other insurance" provisions similar to those at issue in the present case conflicted).  *But see Willbros*, 2010 WL 924703, at *8 (GARZA, J., concurring) (contending that the plain language of the "other insurance" provisions was not reasonably subject to a construction that produces a conflict).

[42] *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 590 (Tex. 1969).

[43] Pacific argued below that its policy excluded a duty to defend; the district court rejected this argument.  Pacific's brief does not renew this exclusion argument, and thus we consider it waived.

No. 07-20157

*        *        *

We REVERSE the district court's grant of summary judgment in favor of Travelers and REMAND for further proceedings consistent with this opinion.