# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2011

No. 09-30750

Lyle W. Cayce
Clerk

DONALD J. SPEARS, SR.; CONSTANCE E. SPEARS,

Plaintiffs–Appellants,

v.

CINTAS SALES CORP.; CINTAS CORP. #2; CINTAS CORP. #81,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:07-CV-1701

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Donald and Constance Spears appeal from the district court's grant of summary judgment in favor of Cintas Sales Corporation, Cintas Corporation No. 2, and Cintas Corporation No. 81 (collectively, Cintas).  Donald Spears was severely burned while wearing a Cintas uniform.  He alleges that the uniform was unreasonably dangerous and is seeking damages under the Louisiana Products Liability Act (LPLA).  On appeal, Spears argues that the district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30750

erred in finding that Spears's use of the uniform was not a reasonably anticipated use. We affirm.

**I**

At the time of his accident, Spears was employed as the shop foreman for Apeck Construction, Inc., a construction firm that specialized in dirt work. Spears was the head mechanic in charge of servicing and repairing equipment used by Apeck in its business. While performing his duties, Spears wore a Cintas uniform that Apeck had purchased for him. The uniform was sixty-five percent polyester and thirty-five percent cotton.

Cintas provided uniforms to Apeck's employees according to the terms of a rental agreement. Prior to the parties entering the agreement, a Cintas sales representative made a sales pitch to the Apeck employees in the Apeck mechanic shop. Subsequently, Apeck's president signed the rental agreement, which included the following provision:

> Unless specified otherwise, the garments supplied under this agreement are not flame retardant or acid resistant and contain no special flame retardant or acid resistant features. Customer agrees to notify its employees that their garments are not designed for use in areas of flammability risk or where contact with hazardous materials is possible. Customer warrants that none of the employees for whom garments are supplied under this agreement require flame retardant or acid resistant clothing.

Spears was injured while attempting to start a dump truck powered by a diesel engine. The evidence reflects that to start a diesel engine, a mechanic could use either ether or a gasoline-soaked rag. Spears used a gasoline-soaked rag, a procedure he had used "thousands of times" to attempt to start an engine. On the day of his injury, Spears soaked a rag in gasoline, squeezed out the gasoline, and placed the rag in front of the air intake valve on the dump truck.

No. 09-30750

The dump truck backfired, and Spears's uniform caught on fire. As the uniform burned, it melted and fused to his body, and he was unable to remove the shirt to escape the flames. Spears sustained third-degree burns over fifty percent of his body.

Spears filed suit in state court under the LPLA, alleging that the Cintas uniform was an unreasonably dangerous product.[1] In his petition, Spears also alleged that Apeck was liable for its failure to supply flame retardant uniforms; however, Apeck was dismissed from the case because Spears's exclusive remedy against Apeck was limited to worker's compensation benefits. The case was timely removed to federal district court.

Cintas moved for summary judgment, arguing that Spears could not present sufficient evidence to prove two elements of his claim: (1) that his damages were proximately caused by a characteristic of the Cintas uniform that rendered it unreasonably dangerous; and (2) that the damage arose from a reasonably anticipated use of the uniform. The district court found that Spears's use of the uniform was not a reasonably anticipated use and granted summary judgment in favor of Cintas. This appeal followed.

## II

We review de novo the district court's grant of summary judgment and apply the same legal standards as the district court.[2] Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"[3] by "citing to particular parts of materials in the record."[4]

---

[1] *See* LA. REV. STAT. ANN. § 9:2800.54(A).

[2] *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010).

[3] FED. R. CIV. P. 56(a).

[4] FED. R. CIV. P. 56(c)(1)(A).

No. 09-30750

### III

Spears argues that whether his damage arose from a reasonably anticipated use is a fact question that precludes summary judgment in this case. Under the LPLA, "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product."[5] "If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached."[6] "'Reasonably anticipated use' means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."[7] "This objective inquiry requires us to ascertain what uses of its product the manufacturer should have reasonably expected at the time of manufacture."[8]

A plaintiff's use of a product is not reasonably anticipated in a "situation where a manufacturer provides an express warning cautioning against a use of the product for which the product was neither designed nor intended, and where the plaintiff acts in direct contravention of that warning."[9] "Even if the warning did not reach the users," if the danger from a particular use of a product is obvious, then it is not a "reasonably anticipated use" under the LPLA.[10] However, even if the plaintiff acts in contravention of an express warning, the

---

[5] LA. REV. STAT. ANN. § 9:2800.54(A).

[6] *Broussard v. Procter & Gamble Co.*, 517 F.3d 767, 769 (5th Cir. 2008) (quoting *Kampen v. Am. Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998) (en banc) (internal quotation marks omitted)).

[7] LA. REV. STAT. ANN. § 9:2800.53(7).

[8] *Kampen*, 157 F.3d at 309.

[9] *Id.* at 314.

[10] *Lockart v. Kobe Steel Ltd. Constr. Mach. Div.*, 989 F.2d 864, 868 (5th Cir. 1993).

No. 09-30750

plaintiff's use may be reasonably anticipated if the plaintiff presents "'evidence that despite the warnings, [the manufacturer] should have been aware that operators were using the [product] in contravention of certain warnings.'"[11]

## A

Spears contends that, because the warning in the rental agreement did not reach him, Cintas cannot rely on the warning to show that Spears's use was not reasonably anticipated. Cintas does not dispute that the warning did not reach Spears. Instead, Cintas argues that Spears's use was not a reasonably anticipated use because the danger of exposing the uniform to flammability risks was obvious to Spears.

The record demonstrates that Spears knew that his uniform was not flame retardant. Furthermore, Spears's testimony establishes that Spears knew that his poly-cotton uniform would melt. Spears testified that he knew poly melted, and that it is "like setting a milk jug afire." He also testified that he had worn polyester-cotton blends while working his entire life. However, in a job earlier in his career, he wore cotton when he did extensive welding. Spears explained that he chose to wear cotton while welding because "[c]otton when it burns, then that's it. It don't melt and create a bad scar versus polyester." Because the danger of exposing the uniform to flammability risks was obvious to Spears, Spears's use of the uniform is not a "reasonably anticipated use" under the LPLA.[12]

The parties both spend a significant portion of their briefs disputing whether Spears knew that the engine could backfire and whether his use of a gas-soaked rag was more dangerous than using ether to start the engine. Spears argues that his use of the uniform was not obviously dangerous because he did

---

[11] *Kampen*, 157 F.3d at 314 (quoting *Lockart*, 989 F.2d at 868).

[12] *See Lockart*, 989 F.2d at 868.

not know that the engine would backfire. However, while the danger involved in starting the engine with a gasoline-soaked rag may be relevant in assessing Spears's comparative negligence, it is not relevant to whether Spears's use of the uniform was a reasonably anticipated use. The correct obvious-danger analysis in this case relates to what Spears argues that Cintas should have warned against—that the uniform would melt when exposed to flame. Furthermore, Spears's argument that he did not know the engine would backfire is contrary to his argument that Cintas should have reasonably anticipated that he would be exposed to flammability risks while wearing his uniform. If Spears, an expert mechanic, did not know that there was a risk that the engine would backfire when he attempted to start it, Cintas could not reasonably anticipate that its uniform would be exposed to the backfire of a diesel engine.

**B**

Spears argues that the court should hold that his was a reasonably anticipated use because Cintas should have known that, despite the warning in the rental agreement, Apeck employees were exposed to flammability risks while wearing the Cintas uniform. He contends that the Cintas sales pitch was made in the Apeck shop, where it was obvious that mechanic work was performed. He further asserts that multiple pieces of equipment that would expose Apeck mechanics to flammability risks were present in the shop, such as welding equipment and blowtorches. Spears also argues that Cintas knew or should have known that employees were exposed to flammability risks because it laundered the uniforms, and the clothing to be laundered was smeared with grease, gasoline, lubricants, and other chemicals.

Spears has not shown that Cintas should have known that its warning was being ignored by users of the uniform. The facts that Cintas laundered uniforms with stains on them and that there was welding equipment on the premises are not sufficient to establish that Cintas should have known that Apeck employees

No. 09-30750

were using the uniforms in areas of flammability risk.  Although a Cintas sales person was in Apeck's shop and may have observed welding equipment and blowtorches, that does not mean that Cintas should have known that those employees who actually ordered uniforms would be exposed to flammability risks.  The uniform rental agreement stated that Apeck warranted that none of its employees required flame retardant uniforms.  As the district court concluded, Cintas "has a right to rely upon a customer assurance that the uniforms furnished are not required to be flame retardant."  Accordingly, we hold that Spears's use of the uniform was not a reasonably anticipated use.

\*         \*         \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

No. 09-30750

DENNIS, Circuit Judge, dissenting.

Under the Louisiana Products Liability Act (LPLA), "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous *when such damage arose from a reasonably anticipated use of the product* by the claimant or another person or entity." 9 La. Rev. Stat. § 2800.54(A) (emphasis added). The district court granted summary judgment for Cintas, finding that there was no genuine dispute as to the material fact that Donald Spears' conflagration did *not* arise from a reasonably anticipated use of the Cintas uniform because Spears' use of gasoline vapors to start an air-locked Detroit diesel engine while wearing the uniform was obviously dangerous and, therefore, this use of the Cintas uniform was not reasonably anticipatable. The only issue in this appeal is whether the district court was correct that there was no genuine dispute as to that material fact. The majority agrees that there was no such dispute and affirms. I disagree and respectfully dissent.

Donald Spears, in opposition to summary judgment, introduced deposition testimony by himself and a number of his coworkers, that his use of gasoline vapors to start the Detroit diesel engine was a common practice and was not considered dangerous. Donald Spears also testified that he believed that it was safe to use gasoline vapors to start the Detroit diesel, because of its characteristics differing from that of other types of diesel engines.[1] He admitted

---

[1] Spears testified in his deposition about several attributes of the Detroit diesel engine that made him believe that "it was highly impossible" for the engine to backfire, and hence, that he had "never heard of any Detroit engine backfiring." Diesel engines, Spears explained, "run[] on combustion instead of a spark like spark plugs." (R. at 214). He testified that the Detroit engine only has two-cylinders, whereas another type of diesel engine "is a four-cylinder engine, and it has exhaust valves." Additionally, Spears said that the Detroit engine "has another blower that sits on top of the engine that forces the air in. . . . I would never believe that the backfire would have made it all the way through that blower situation because it is a high-volume velocity blower plowing toward the engine . . . and away from" the top of the engine where ether or gasoline vapors is introduced to start the engine. And because the

No. 09-30750

that he had seen other types of diesel engines backfire and explode, but said he had never seen or heard of a Detroit diesel doing so.  Further, Donald Spears testified and submitted an affidavit that he had safely used gasoline vapors to start Detroit diesel engines countless times in the past.  Likewise, Joey Williams, Apeck's president, testified that he had heard that using gasoline vapors was "the common practice" before ether was available.  It is undisputed that ether was not available to Donald Spears when he attempted to start the Detroit diesel motor with gasoline vapors.  Charles Carhee, an Apeck mechanic; Ronald Spears, another Apeck mechanic; and Charles Williams, Apeck's former president, all testified that they had personally used gasoline vapors to start diesel engines, although not while working at Apeck.  Carhee testified that he had used gasoline vapors for this purpose and never had a problem doing so.  Carhee also testified that "[m]ost mechanics shops" use gasoline vapors if ether starting fluid is not available and that he had seen it done "in many mechanics shops."  Although disagreeing with Donald Spears in other respects, Monty Orme, Apeck's safety coordinator, and Ronald Spears testified that they had never seen or heard of a Detroit diesel engine backfiring as it did in this case.  Further, Apeck president Joey Williams; Stacy Williams, Apeck's vice president; and Apeck mechanic Ronald Spears all testified that they had never seen or heard of any diesel engine backfiring as it did in this case.

The foregoing evidence controverted the deposition testimony of several Apeck officers and employees that gasoline vapors were not used at Apeck to start air-locked diesel engines; that it was common practice instead to use ether-based starting fluids; and that ether was safer to use than gasoline. Moreover, Donald Spears' other countervailing evidence tended to rebut their testimony: He testified that ether is not safer because it is "a higher octane, so, therefore,

---

blower is "mechanically driven[,] . . . when you start to turn [the engine] over, . . . [the blower] is turning at that time."  (R. at 342).

9

it's more highly explosive"; that using gasoline vapors is safer for the person trying to start the engine; and that his personal preference was to use gasoline vapors. Similarly, Apeck mechanic Charles Carhee testified that he had personally used gasoline vapors and had never had a problem doing so. He also testified that: "Apparently there wasn't" a problem with Spears' using gasoline vapors; that it was a "common practice"; that he did not "see anything wrong with" it; and that while he used gasoline vapors on his own equipment, he would not use it on "other people's equipment . . . because of concern of damage to the engine, . . . [n]ot because of any concern for safety as opposed to ether versus" gasoline. Likewise, Apeck mechanic Ronald Spears testified that he had personally used gasoline vapors and had "routinely seen people do that throughout [his] life"; and while he testified that he would now choose to use ether, in part because "gas gets too expensive," he testified that he did not think that Donald Spears had failed to act in a safe and prudent manner at the time of his accident. Apeck vice president Stacy Williams testified that he did not know whether gas or ether was more dangerous, and that he did not know why, at Apeck, ether was used instead of gas; and when asked "if it was a safety issue or some other basis," he responded, "No. It's just ether has always been around, that's what I always knew, that everybody started with ether." Williams also testified that he did not know if using gasoline vapors was dangerous, and that Apeck did not have a rule against it. (Apeck safety coordinator Monty Orme similarly testified that Apeck did not have a procedure, written or otherwise, about how to start diesel engines.) Finally, Stacy Williams testified that at the time of the accident, he "wouldn't have been alarmed if somebody was using a gas rag to attempt to start a diesel in this manner"; that Spears "was doing what was normal to start a diesel engine before ether came out"; and when asked if he thought "Donald Spears failed to take reasonable steps to protect himself from

harm," Williams responded, "I don't think he could have done anything else being as he's done it thousands of times."

Viewing the evidence in the light most favorable to the non-moving party, it is clear that the record evidence would allow a reasonable juror to find or infer that Donald Spears was wearing a Cintas' uniform while performing a common mechanical task that did not present an obvious risk of flammability, and which was not an obviously dangerous use of the Cintas uniform, and as such, was a reasonably anticipated use of the Cintas uniform. Thus, Cintas has not met its burden to demonstrate a crucial requisite to its entitlement to summary judgment, *viz.*, that there is no genuine dispute as to the material fact that Donald Spears' accident arose from an obviously dangerous use of the Cintas uniform; or, that it did not arise from a reasonably anticipated use of the Cintas uniform. *See* Fed. R. Civ. P. 56(a) (2010); 9 La. Rev. Stat. § 2800.54(A); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Consequently, Cintas is not entitled to summary judgment on this record because it failed to show that there was no genuine dispute as to this material issue of fact. Accordingly, the majority has fallen into error in not reversing the judgment of the district court and in not remanding the case to it for further proceedings.