# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2014

Lyle W. Cayce
Clerk

————

No. 13-20512

————

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA; NEW YORK MARINE & GENERAL INSURANCE COMPANY; NAVIGATORS INSURANCE COMPANY; NATIONAL LIABILITY & FIRE INSURANCE COMPANY, ("Starr Marine"),

                                          Plaintiffs – Appellees,

v.

W & T OFFSHORE, INCORPORATED,

                                          Defendant – Appellant.

---------------------------------------------------------------------------------------------

XL SPECIALTY INSURANCE COMPANY,

                                          Plaintiff - Appellee,

v.

W & T OFFSHORE, INCORPORATED,

                                          Defendant – Appellant.

---------------------------------------------------------------------------------------------

LIBERTY MUTUAL INSURANCE COMPANY,

                                          Plaintiff – Appellee,

v.

W & T OFFSHORE, INCORPORATED,

                                          Defendant – Appellant.

---------------------------------------------------------------------------------------------

No. 13-20512

NAVIGATORS INSURANCE COMPANY; NEW YORK MARINE & GENERAL INSURANCE COMPANY,

Plaintiffs – Appellees,

v.

W & T OFFSHORE, INCORPORATED,

Defendant – Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

W&T Offshore ("W&T")—an energy exploration and development company—sustained significant damage to its operations as a result of Hurricane Ike. Anticipating that W&T would seek recovery for its Removal of Debris ("ROD") expenses under its Umbrella / Excess Insurance Policies ("Umbrella Policies"), the four Umbrella Insurers Underwriters ("Underwriters") sought a declaratory judgment that they were not liable for W&T's ROD damages. In their motion for summary judgment, Underwriters argued that the Umbrella policies only take effect if W&T's underlying / primary insurance is exhausted by claims that would be covered by the Umbrella Policies. Because W&T's underlying insurance was admittedly exhausted by claims not covered by the Umbrella Policies, the insurers argued that they have no liability. In its cross-motion for summary judgment, W&T argued that the Umbrella Policies takes effect once all underlying insurance is exhausted, regardless of how that exhaustion occurred. The district court granted summary judgment in favor of Underwriters, holding that the plain

No. 13-20512

terms of the Umbrella Policies state that it only takes effect if the underlying policies are exhausted by claims that would be covered under the Umbrella Policies themselves.  We reverse and render summary judgment in favor of W&T.

## FACTS AND PROCEEDINGS

W&T purchased three types of insurance policies to indemnify itself against hurricanes: (1) a commercial general liability policy (MS-S-2773) (the "Primary Liability" policy); (2) five Energy Package Policies ("Energy Package"); and (3) four Umbrella / Excess Liability Policies.  Plaintiff-Appellant Underwriters provided the Umbrella Policies, which are identical in all relevant aspects.  The Umbrella Policies are the only policies at issue.

The key difference between the Umbrella Policies and the Energy / Primary Liability policies is that the Umbrella Policies do not cover (1) property damage or (2) operators' extra expenses ("OOE") that are incurred by W&T itself; they cover only claims against W&T by a third-party.  All relevant policies have been endorsed to cover ROD claims.

On September 12, 2008, Hurricane Ike struck the Gulf of Mexico, allegedly causing damage to over 150 offshore platforms in which W&T had an interest.  Braemer Steege—the loss adjuster for W&T's claims—submitted over $150 million in claims for OOE and property damage under the Energy Package.  The Energy Package contains a $10 million self-insured retention ("SIR"), which W&T has to exhaust prior to submitting any claims.  Once that threshold is met, coverage proceeds in order through five policies, which provide a total of $150 million in coverage over-and-above the $10 million SIR. Because submitted expenses for OOE and property damage exceeded $150 million, Braemer Steege forecasted that W&T would submit all of its ROD claims—estimated to exceed $50 million—to the Umbrella Policies.

No. 13-20512

In anticipation of these claims, Underwriters filed separate suits seeking declaratory judgments that W&T's claims are not covered under the Umbrella Policies because the Retained Limit of those policies had not been exhausted. The "Retained Limit" is the triggering mechanism for the "Coverage" provision of the Insuring Agreement, which provides:

### INSURING AGREEMENTS

### I.     COVERAGE

We will pay on behalf of the **Insured** those sums in excess of the Retained limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world.  The amount we will pay for damages is limited as described in **INSURING AGREEMENT III, LIMITS OF INSURANCE.**

The "Retained Limit" is defined in Insuring Agreement § III.E:

### E.     Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the **SCHEDULE OF UNDERLYING INSURANCE** and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

2.    The amount stated in the **SPECIAL DECLARATIONS** as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the **SCHEDULE OF UNDERLYING INSURANCE** nor by any other underlying insurance providing coverage to the Insured;

And then up to an amount not exceeding the Each Occurrence Limit as stated in the **SPECIAL DECLARATIONS.**

4

Underwriters argue that the Retained Limit of the coverage has not been met because W&T exhausted its underlying policies, (*i.e.*, the "total of the applicable limits of the underlying policies"), using claims that are not covered by the Umbrella Policies, (*i.e.*, the $150 million of OOE and property damage claims).  In support, Underwriters cite § III.D, which provides:

> **D.**     Subject to **B.** and **C.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under **INSURING AGREEMENT [§] I** because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence.**
>
> If the applicable limits of insurance of the policies listed in the **SCHEDULE OF UNDERLYING INSURANCE** or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our Policy we will:
>
> 1.     In the event of reduction, pay in excess of the reduced underlying limits of insurance; or
> 2.     In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

W&T argues that this section does not govern the circumstances under which the Retained Limit is depleted, but rather describes the Underwriter's duties and obligations *if* the underlying insurance policies "are reduced or exhausted by payment of one or more claims that would be insured by our Policy."  Because the "total of the applicable limits of the underlying policies listed in the **SCHEDULE OF UNDERLYING INSURANCE** and the applicable limits of any other underlying insurance providing coverage to the **Insured**" has been exhausted, W&T argues that Underwriters are liable "for that portion of damages in excess of the **Insured's** Retained Limit."

The district court granted Underwriters' motion for summary judgment, finding that the "underlying insurance can only be exhausted by claims that

No. 13-20512

are also covered by the Excess Liability policies themselves." Because W&T exhausted the underlying policies with its OOE and property damage claims, the court held that "coverage under the Excess Liability policies has not been triggered and there is no coverage for the costs for removal of wreck or debris."

W&T appeals, raising the same arguments it did in the court below.

## STANDARD OF REVIEW

"We review de novo the district court's grant of summary judgment." *Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "As part of that analysis, we review de novo the district court's interpretation of the contract, including the question of whether the contract is ambiguous." *Id.*

"Under Texas law, insurance policies and indemnity agreements are contracts, and the general rules of contract interpretation apply." *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010). "[A] court construing a contract must read that contract in a manner that confers meaning to all of its terms, rendering the contract's terms consistent with one another." *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006). "In doing so, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* (internal quotation marks, emphasis, and ellipses omitted).

If, after reading the terms of the policy and giving meaning to all provisions, the terms "are unambiguous, the court must enforce the policy according to its plain meaning." *Travelers Lloyds*, 602 F.3d at 681. "An

insurance policy's terms are unambiguous if they have definite and certain legal meaning." *Id.* "The parties' disagreement regarding the extent of coverage does not create an ambiguity." *Id.* However, if the terms of the contract are ambiguous, the court should adopt the interpretation that is most favorable to the insured. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).

## DISCUSSION

Although Underwriters' argument—embraced by the district court—has force at first glance, a careful reading of the contract unambiguously precludes Underwriters' interpretation. W&T's interpretation fits neatly with (1) the plain text of the Coverage provision, (2) the definition of a Retained Limit, and (3) other contract provisions relating to coverage and payment. Further, W&T's interpretation explains § III.D in a way that is not only consistent with its own language and the contract as a whole, but also sheds light on the nuances of Underwriters' coverage obligations. By contrast, Underwriters' argument relies entirely on the text of § III.D, which is insufficiently specific to carry the burden of a similar provision in *Westchester Fire Ins. Co. v. Stewart & Stevenson Services, Inc.*, 31 S.W.3d 654 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).[1] Further, Underwriters' interpretation of § III.D would render it nonsensical when applied to other portions of the contract. We reverse the judgment of the district court and render summary judgment in favor of W&T.

---

[1] As will be discussed in Section I.B below, Underwriters' contention that § III.D "mean[s] the same" thing as the provision in *Westchester* because "[o]ne provision is the converse of the other" is a logical fallacy. *See* Liberty Mutual Br. 25. Whereas the provision in *Westchester* stated that exhaustion "by reason of payment of losses not covered by this policy" would result in applying the policy as if "such aggregate limit [had] not been reduced or exhausted," Underwriters' Policies dictate what will happen *if* the underlying policies are exhausted by claims that would be covered by the Umbrella Policies.

No. 13-20512

## I.    Plain Language of Agreement

The logical place to begin when determining whether W&T's ROD claims are covered by the Umbrella Policies is the "Coverage" provision, which provides:

### INSURING AGREEMENTS

### I.    COVERAGE

> We will pay on behalf of the **Insured** those sums in excess of the Retained limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in **INSURING AGREEMENT III, LIMITS OF INSURANCE.**

By its terms, this provision (1) obligates Underwriters to pay "those sums in excess of the Retained limit that the Insured becomes legally obligated to pay by reason of liability imposed by law," and (2) provides that the "amount we will pay for damages is limited" as described in "Insuring Agreements § III – Limits of Insurance." We address these provisions in turn.

### A.    Retained Limit

Under the Coverage provision, Underwriters are only obligated to pay (1) "sums in excess of the Retained limit" that (2) "the Insured becomes legally obligated to pay by reason of liability imposed by law"[2] because of (3) an event covered by the policy.[3] Because Underwriters will only pay "sums in excess of the Retained limit," the definition of that term is essential to understanding

---

[2] The clause "becomes legally obligated to pay by reason of liability imposed by law" is why Underwriters are not liable for the damages W&T sustained to its own property; the Umbrella Policies indemnify against third-party claims, not first-party claims. This is not disputed.

[3] Although ROD damages are not mentioned in this provision, they were incorporated by endorsement.

8

the policy. The "Retained Limit" is defined in Insuring Agreement § III.E, which states that the Retained Limit is defined as the greater of (1) the amount of underlying insurance or (2) the amount of SIR that is not covered by the underlying insurance. The greater amount here is the "total of the applicable limits of the underlying policies listed," which amounts to $161 million in coverage.

Taking the text of the Coverage provision on its face, Underwriters are obligated to pay "sums in excess of" the "total of the applicable limits of the underlying policies listed," *i.e.*, sums in excess of the $161 million of underlying coverage. Nothing in the text of the Coverage provision or the definition of the Retained Limit specifies how the $161 million "limit[] of the underlying policies" must be reached or states that the Retained Limit refers exclusively to sums covered by the Umbrella Policy.

The plain text of the Coverage provision states that Underwriters are liable for any damages in excess of the Retained Limit that are covered by the contract. Because the Retained Limit has been exhausted, this suggests that Underwriters are liable for W&T's ROD damages.

**B.    Damages Limited by Insuring Agreement § III**

"Section I – Coverage" also provides that the "amount we will pay for damages is limited" as described in "Insuring Agreement § III – Limits of Insurance." "Section III – Limits of Insurance" outlines "the most [Underwriters] will pay" under various scenarios; it makes no claims about the breadth of coverage or requirements for exhausting the Retained Limit. Section III.B, for example, states that the "General Aggregate Limit is the most we will pay for all damages *covered under **Insuring Agreement [§] I***." (italics added, bold in original). Section III.D—the basis of Underwriters' argument—begins with a similar provision, stating that the "Each Occurrence Limit is the most we will pay for the sum of damages *covered under **Insuring Agreement***

*[§] I*." (italics added, bold in original). The "sum of damages covered under **Insuring Agreement [§] I**," as just discussed, are those damages in excess of the Retained Limit, *i.e.*, the "total of the applicable limits of the underlying policies." In context, the "applicable limits of the underlying policies" must refer to the Each Occurrence Limits of those polices. Thus, Underwriters are liable to pay sums in excess of the total "Each Occurrence Limits" of the underlying policies, up to their own Each Occurrence Limit.

If, however, the applicable limits of insurance—*i.e.*, the Each Occurrence limits of the underlying policies—are reduced or exhausted *by payment of one or more claims that would be insured by [the] policy*," Underwriters undertake additional obligations. If the Each Occurrence Limits of the underlying policies are reduced by payments of one or more claims that would be insured by the policy, Underwriters must "pay in excess *of the reduced underlying limits* of the insurance," rather than the standard payment in excess *of the Retained Limit*.

If the underlying policies are exhausted by claims that would be insured by the policy, however, Underwriters undertake an even greater obligation. Whereas Underwriters are generally only obligated to "pay . . . sums," complete exhaustion of the underlying policies by claims that would be insured by the policy requires Underwriters to "continue in force as underlying insurance," which, in addition to making payments as the underlying insurance, requires Underwriters to defend against any suit claiming damages covered by the policy.

The correctness of this interpretation is reflected in "Insuring Agreement § II.A.1 – Defense," which states that when the "Limits of Insurance of the underlying policies . . . have been exhausted by payment of claims to which this Policy applies," Underwriters "shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this

Policy."   Note the specificity with which the defense provision refers to the claims *requiring* Underwriters to defend: those where the "underlying policies . . . have been exhausted by payment of claims *to which this Policy applies*."   Those claims require that Underwriters mount a defense on behalf of W&T; given that the usual obligation is simply to "pay . . . sums" on W&T's behalf, the clear implication is that there are some claims which Underwriters must pay where the underlying policies have *not* been exhausted by claims that would be covered by the policy.   *See* Insuring Agreements § II.C ("In all other instances except **A.** above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**.  We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, *may create liability on our part under the terms of this policy*.") (italics added).

Other provisions discussing the payment of sums under the contract support this interpretation.  "Section VI.P – When Loss Is Payable," states that "Coverage under this Policy will not apply unless and until the **Insured** or the **Insured's** Underlying Insurer is obligated to pay the Retained Limit.   When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this Policy."   This provision is instructive for several reasons.   First, it again refers to the Retained Limit as the triggering mechanism for the Umbrella Policy.   Second, it states that its obligation begins when the Underlying Insurance "is obligated to pay the Retained Limit."   It does not qualify how the Retained Limit must be paid or that it must be met with claims covered under the Umbrella Policy; it simply states that it must be met.  This stands in stark contrast to the next sentence, which explicitly refers to the Umbrella Policies' coverage provisions and states that Underwriters "will promptly pay . . . the amount of loss falling

within the terms of this Policy." So while the Retained Limit must simply be met, payments on claims will only be made if they fall under the terms of the policy. If the terms of the Umbrella Policy also governed how the Retained Limit must be exhausted, one would expect to find similar language to that effect.

In fact, that is precisely what occurred in *Westchester*, 31 S.W.3d 654, which was relied upon by both the district court opinion and Underwriters' briefing. The policy in *Westchester* provided that if the aggregate limit of the underlying policies was exhausted "by reason of payment of losses not covered by this policy," Westchester would apply the policy as if "such aggregate limit [had] not been reduced or exhausted."[4] By its explicit terms, the *Westchester* policy notified the beneficiary that its underlying insurance would not be considered exhausted unless it was exhausted by claims covered under the policy. This is far more explicit than the provision at issue here, which merely outlines what will happen *if* the underlying insurance is entirely exhausted by claims covered under the policy; it says nothing about what will happen if the Retained Limit is exhausted by non-covered claims.

Underwriters' contend that § III.D "mean[s] the same" thing as the provision in *Westchester* because "[o]ne provision is the converse of the other." This is a logical fallacy.[5] Whereas the *Westchester* provision lays out a

---

[4] 31 S.W.3d at 658 ("In the event of the reduction or exhaustion of the Aggregate Limits of Liability of the "Underlying Insurance" by reason of payment of losses not covered by **this** policy; this policy shall apply in the same manner it would have applied had such aggregate limit not been reduced or exhausted.").

[5] If A = "underlying policies exhausted by covered claims" and B = "coverage," the provisions work as follows:
**Westchester Policy:**
Not A → Not B (alternatively, B → A).

**Underwriters' Policy:**
A → B (alternatively, Not B → Not A).

limitation on coverage—if *not* reduced or exhausted by covered claims, then no coverage—the Umbrella Policies explain two potential scenarios—if reduced or exhausted by covered claims, then either (1) pay in excess of reduced limit limit or (2) act as primary insurer.  The two policies are not identical, and *Westchester*, rather than helping Underwriters' argument, provides an excellent example of the type of provision that would be included if the policy meant what Underwriters claim it means.

Thus, the Umbrella Policies provide coverage in four ways.  First, if the Retained Limit is met, Underwriters pay sums for covered damages in excess to that limit.  Second, if the underlying policies are reduced by claims covered under the policy, Underwriters pay sums—not in excess of the Retained Limit—but in excess of the reduced limit of the underlying policies.  Third, if the underlying policies are exhausted by covered claims, Underwriters act as the underlying insurers and are obligated to defend against covered claims.  And finally, if Underwriters provide the only coverage, they again must act as the underlying insurers and defend against covered claims.  Because these scenarios are clear from the face of the policy, we reverse the district court and render judgment in favor of W&T.

## CONCLUSION

For the reasons stated, we REVERSE the district court and RENDER SUMMARY JUDGMENT in favor of W&T Offshore.

---

Underwriters are arguing that B → A is the same as A → B.  This is the "affirming the consequent" fallacy, and is simply incorrect.